Julius Bradford
High Desert State Prison
P.O. Box 650
Indian Springs, NV 89070
NDOC# 81604

FILED ENTERED RECEIVED SERVED ON
COUNSEL/PARTIES OF RECORD
JUL 20 2020
CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: DEPUTY

United States District Court
District Of Nevada

Julius Bradford,
Plaintiff,
vs.
Steve Sisolak, et al.,
Defendants.

Case No. 2:20-cv-00871-APG-BNW

Motion For Entry Of Preliminary Injunction

# Motion For Entry Of Preliminary Injunction

Comes Now, the Plaintiff, Julius Bradford, appearing in Pro Se, and hereby moves this Honorable Court, pursuant to FRCP 65(a), to enter an order enjoining Defendants Sisolak, Ford, Wolfson, Clark County, and its Board of Commissioners from:

1. Citing and/or pleading Section 9 of either Senate Bill No. 2 (1957) or, 1957 Statutes of Nevada, Chapter 2, as the law(s) that any statute in the codified version, "Nevada Revised Statutes" (NRS-Code), purports to codify or be prima facie evidence of; and

2. Enforcing Section 9 of both Senate Bill No. 2 (1957) and, 1957 Statutes of Nevada, Chapter 2.

This Motion is made and based upon the papers and

pleadings on file herein, in addition to the Memorandum of Law, documentary evidence, and Plaintiff's sworn declaration in support hereof.

Dated this 13th day of July, 2020.

Respectfully Submitted,

[signature]
Julius Bradford

Certificate Of Service

I hereby certify that on or about the 16th day of July, 2020, pursuant to FRCP 5(b), I caused to have mailed a true and correct copy of the foregoing "Motion For Entry of Preliminary Injunction" to the following:

Aaron D. Ford
Office of the Attorney General
100 N. Carson St.
Carson City, NV 89701

Steve Sisolak
State Capitol Building
101 N. Carson St.
Carson City, NV 89701

Board Of Commissioners
Clark Co. Government Ctr.
500 S. Grand Central Pkwy.
Las Vegas, NV 89155

Steven B. Wolfson
Clark Co. Dist. Atty.
200 Lewis Avenue
Las Vegas, NV 89155

[signature]
Julius Bradford

Julius Bradford
High Desert State Prison
P.O. Box 650
Indian Springs, NV 89070
NDOC# 81604

United States District Court
District Of Nevada

Julius Bradford,
Plaintiff,
vs.
Steve Sisolak, et al.,
Defendants.

Case No. 2:20-cv-00871-APG-BNW

Declaration In Support Of Plaintiff's Motion For Entry Of Preliminary Injunction

Declaration In Support Of Plaintiff's Motion For Entry Of Preliminary Injunction

Julius Bradford states:

1. I am the Plaintiff in this case. I am 35 years old, and I am currently incarcerated at High Desert State Prison in Indian Springs, Nevada. Notwithstanding that, this action in **NO** way relates to prison conditions.

2. My Application To Proceed In Forma Pauperis (Document 1), and Complaint (Document 1-1) were filed on May 12, 2020. I make this Declaration in support of my Motion seeking a preliminary injunction to prevent the enforcement and/or bad-faith pleadings of laws that are unconstitutional on their respective faces.

3. In late-March 2019, with the help of Theresa Stewart, I was able to speak with an employee of the Nevada State Library, Archives, and Public Records ("N.S.L.A.P.R.") in order to obtain a copy of the attested enrolled Senate Bill No.2(1957). On March 28, 2019 a copy was sent via email from the N.S.L.A.P.R. official.

4. On April 9, 2019, after having an opportunity to examine the bill, I had Theresa Stewart, in my name and on my behalf, request to obtain a certified copy of the attested enrolled Senate Bill No.2(1957). The N.S.L.A.P.R. official provided an invoice and instructions to do so. See Attached Exhibit B.

5. Theresa Stewart submitted, in my name and on my behalf, the invoice, payment, and a short note which included a request for the N.S.L.A.P.R. official to state the total amount of pages which comprised the attested enrolled Senate Bill No.2(1957) in its entirety.

6. In late-April 2019, the certified copy of the attested enrolled Senate Bill No.2(1957) arrived at the given address, along with a letter from the N.S.L.A.P.R. official which states, "Enclosed you will find a certified copy of SB2 from 1957. There are 8 pages total for the certified document." See Attached Exhibit C.

7. In or about June 2019, I instructed Theresa Stewart to email the N.S.L.A.P.R. official in my name and on my behalf, and obtain additional certified copies of the attested enrolled Senate Bill No.2(1957). These certified documents were also received from the N.S.L.A.P.R. shortly thereafter.

8. Due to the nature and properties of the document, I have submitted one of these certified copies of the attested enrolled Senate Bill No.2(1957), pursuant to LR 10-3(c), separately,

with a captioned cover sheet titled "Exhibit 'A' - Submitted Pursuant To Local Rule 10-3(c)".

9. Upon inspection of the certified copy of the attested enrolled Senate Bill No. 2 (1957), I hereby declare that there are NO terms or provisions for the statute laws 1.010 to 710.590, inclusive, listed either within, or following, Section 9 of the Act. Neither are there any terms or provisions for ANY other laws or statutes listed within, or following, Section 9 of the Act.

10. On September 2, 2019 I served upon Defendant Ford a sworn statement, which while admittedly dependent upon the recipient's reading as well of the pleadings filed with it to have its full impact, was still sufficient to make him aware that a challenge had been raised concerning the validity of Senate Bill No. 2 (1957) and/or 1957 Statutes of Nevada, Chapter 2. (See Attached Exhibit D).

11. On November 19, 2019, in an unrelated hearing in state court at which I represented myself in Pro Se, Defendant Wolfson's Chief Deputy, Giancarlo Pesci, was handed a certified copy of the attested enrolled Senate Bill No. 2 (1957) which he took the opportunity to inspect.

12. On November 27, 2019, in the same state-court proceedings, I filed a Motion seeking to have NRS 200.020, as found in the NRS-Code, declared invalid. The argument was simply that the terms/provisions listed in the NRS-Code were not reflected in the official Statutes of Nevada, and the statute in the NRS-Code purports to codify and be prima facie of a statute which had been repealed. A copy of the pleading was served upon Defendant Ford, in his capacity as Nevada's Attorney General. (See Exhibit E, Attached).

13. On January 2, 2020, Defendant Wolfson, through his Chief Deputy, Giancarlo Pesci, filed an Opposition to the Motion referred to in Paragraph 12 herein, pleading Senate Bill No. 2 (1957) and/or 1957 Statutes of Nevada, Chapter 2, as the law that NRS 200.020 ~~is~~ codifies and is prima facie of. The pleading insinuated that since 200.020 falls between 1.010 and 710.590, it is covered by the word "inclusive". And the pleading included the entirety of Senate Bill No. 2 (1957), as found in a publication, rather than the enrolled bill. However, Section 8 of the Act, its provisions and their implications in regards to NRS 220.170(3), are clearly pleaded as well. See Attached Exhibit F; Page 5, Lines 26-28.

14. On January 27, 2020, I filed my Reply to Mr. Pesci's Opposition. See Attached Exhibit G.

15. The facts offered by, and Exhibits submitted in support of, Paragraphs 10-14 of this Declaration, are solely intended to be an example of the way Defendant Wolfson and his deputies cite and/or plead Senate Bill No. 2 (1957) / 1957 Statutes of Nevada, Chapter 2 in bad faith when they allege that any statute in the NRS-Code codifies Section 9 of the Act. This is a routine practice. Fed. R. Evid. 406

16. Further, I believe that any challenge to statutes in the NRS-Code, which on their face purport to codify and be prima facie of laws which have been repealed and/or are not found within the Statutes of Nevada, pursuant to the procedure of NRS 220.170(3), will trigger the same bad faith pleading from Defendant Wolfson and his deputies. Even though (1) they are aware of the provisions of Section 8 of Senate Bill No. 2 (1957), which makes it legally impossible pursuant to NRS 220.170(3) for the NRS-Code to codify Section 9 of Senate Bill No. 2's provisions since the NRS-Code can only codify what is included in Statutes of Nevada; (2) Section 9

shows no terms or provisions either in the Statutes of Nevada or in the attested enrolled Senate Bill No. 2 (1957) and they are well aware of it.

17. I plan on challenging NRS 195.020, among others, as prima facie pursuant to the terms of NRS 220.170(3), by showing that the law it purports to codify, "NCL § 9958", is not only NOT found in the Statutes of Nevada, but was also expressly repealed by Section 3 of 1957 Statutes of Nevada, Chapter 2. (See 28 USC § 1738; Article 4 § 1, U.S. Constitution). I cannot exercise my constitutional right to do so whilst the Defendants, their deputies, employees, and other subordinates are allowed to plead legal impossibilities, knowing their impossibility, and enforce "laws" which have no terms, provisions, possible penalties, or enforcement guidelines.

18. The NRS-Code, from NRS 193.010 to NRS 207.520, contains over 100 statutes which purport, on their face, to codify laws/statutes which have been repealed and/or are NOT found in the official Statutes of Nevada. These are statutes which define crimes, their elements, and punishments.

19. My Complaint is currently being "screened" pursuant to the provisions of the Prison Litigation Reform Act, and the Advisory Letter provided by this Court (Document 2) indicates that it may be several months before a Screening Order is issued. Myself, and countless others will suffer irreparable injury in the interim if the Defendants are not enjoined at this stage.

20. Due to the concealment of 1957 Statutes of Nevada, Chapter 2, Section 3 of the Act and its effects in particular, from the NRS-Code and any "HISTORY" section of any statute therein, I am uniquely able to assert and vindicate the rights of all who are unaware

of the constitutional infringements and violations asserted in my Complaint.

21. The sought after injunction does not reach these ultimate goals; however, the removal of the proverbial "Blank Check" in the form of Section 9's "1.010 to 710.590, inclusive", will allow myself and others the freedom to exercise our rights in the manner prescribed by NRS 220.170(3) when challenging a statute in the NRS-Code as prima facie. Without the fear or threat that the Defendants, or their subordinates, will plead in bad faith, even knowing their actions willfully disregard the law.

22. For the reasons set forth in the Memorandum of Law filed with this Motion, Declaration, and documentary evidence, I am entitled to a preliminary injunction enjoining Defendants Sisolak, Ford, Wolfson, Clark County, and its Board of Commissioners from, 1) citing and/or pleading Section 9 of either Senate Bill No. 2 (1957) or, 1957 Statutes of Nevada, Chapter 2, as the law(s) that any statute in the NRS-Code purports to codify or be prima facie evidence of; and 2) enforcing Section 9 of both Senate Bill No. 2 (1957) and, 1957 Statutes of Nevada, Chapter 2.

23. For the foregoing reasons, the Court should grant the Motion For Entry Of Preliminary Injunction.

Verification Pursuant To 28 U.S.C. §1746

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 24th day of June, 2020.

Julius Bradford

## Certificate of Service

I hereby certify that on or about the 16th day of July, 2020, pursuant to FRCP 5(b), I caused to have mailed a true and correct copy of the foregoing "Declaration In Support Of Plaintiff's Motion For Entry Of Preliminary Injunction" to the following:

Aaron D. Ford
Office of the Atty. Gen.
100 N. Carson St.
Carson City, NV 89701

Steve Sisolak
State Capitol Building
101 N. Carson St.
Carson City, NV 89701

Board Of Commissioners
Clark Co. Govt. Center
500 S. Grand Central Pkwy.
Las Vegas, NV 89155

Steven B. Wolfson
Clark Co. Dist. Atty.
200 Lewis Avenue
Las Vegas, NV 89155

[signature]
Julius Bradford

**EXHIBIT B**

**EXHIBIT B**

# NEVADA STATE LIBRARY, ARCHIVES AND PUBLIC RECORDS

# INVOICE

**ARCHIVES AND RECORDS**
100 North Stewart Street
Carson City, NV 89701-4285
775-684-3362/775-684-3311
nfaillers@admin.nv.gov

INVOICE NO. A19-09
DATE April 12, 2019

To Julius Bradford

| RECEIPT NUMBER | PAYMENT TYPE | PAYMENT TERMS | DATE PAID |
|---|---|---|---|
| | | All Services Must be Paid in Advance | |

| QUANTITY | DESCRIPTION | UNIT PRICE | LINE TOTAL |
|---|---|---|---|
| 1.00 | Document certification | $ 5.00 | $5.00 |
| | Large Format Scan (200 dpi) | 2.29 | |
| | Color Scans = $3.75 each | 5.00 | |
| | Color Scans = $3 per linear foot | 3.00 | |
| | Document scanning: oversize pages on Zeutschel scanner | 0.20 | |
| | Document scanning (per page) | 0.10 | |
| | Microfilm Duplicate | 15.00 | |
| | Photocopies | 0.10 | |
| | Photo Scans (per image) | 0.10 | |
| | Black and White | 2.00 | |
| | Color | 3.00 | |
| | CD | 10.00 | |
| | Scans from Microfilm (per image to 300 dpi Tiff) | 0.05 | |
| | Scans from Microfilm (per image to 300 dpi pdf) | 0.11 | |
| | Scanning Operator (per hour) | 28.05 | |
| | Non-standard document handling - stitching hourly rate | 50.00 | |
| | Research - Nevada Residents (per hour) | 15.00 | |
| | Research - Non-Nevada Residents (per hour) | 20.00 | |
| | | TOTAL | $ 5.00 |

Please make all checks payable to Nevada State Archives, include invoice number, and write *Attention: Natacha Faillers* on envelope.

**THANK YOU!**

**Secretary**

| | |
|---|---|
| **From:** | Julius Bradford <juliusbradford@aol.com> |
| **Sent:** | Tuesday, May 7, 2019 2:17 PM |
| **To:** | Lisa Rasmussen |
| **Cc:** | Secretary |
| **Subject:** | Fwd: SB 2 from 1957 |
| **Attachments:** | Julius Bradford.pdf |

-----Original Message-----
From: Natacha Faillers <nfaillers@admin.nv.gov>
To: Julius Bradford <juliusbradford@aol.com>
Sent: Fri, Apr 12, 2019 11:21 am
Subject: RE: SB 2 from 1957

Hi Julius,

That will not be a problem. We charge $5.00 per certification and have attached an invoice for you. Please send a check or money to the address listed on the invoice at you convenience. Once we receive your payment, we will then certify a copy of the bill for you and send it to your address.

Please let me know if you have any questions.

Natacha Faillers
Nevada State Library, Archives and Public Records
Working Hours 10:00am – 2:00pm

**From:** Julius Bradford <juliusbradford@aol.com>
**Sent:** Tuesday, April 09, 2019 1:25 PM
**To:** Natacha Faillers <nfaillers@admin.nv.gov>
**Subject:** Re: SB 2 from 1957

Thank you for the copy of the Bill, if possible I would like to obtain a certify copy of this same Bill and have it mailed to me. Can you tell how much a certify copy will cost and how to pay for it. Thank you so much for your help.

Julius Bradford

-----Original Message-----
From: Natacha Faillers <nfaillers@admin.nv.gov>
To: juliusbradford@aol.com <juliusbradford@aol.com>
Sent: Thu, Mar 28, 2019 11:50 am
Subject: SB 2 from 1957

Hi Julius,

I have scanned and attached the 1957 SB 2 for you. I hope this helps!

Have a good day,

Natacha Faillers, Archives Assistant
Nevada State Library & Archives
100 N. Stewart Street
Carson City, NV 89701
775-684-3310/Fax 775-684-3371

**EXHIBIT C**

**EXHIBIT C**

Steve Sisolak
*Governor*

Deonne Contine
*Director*

Tod Colegrove
*Division Administrator*

**STATE OF NEVADA**
**DEPARTMENT OF ADMINISTRATION**
***Nevada State Library, Archives and Public Records***
100 N. Stewart Street | Carson City, NV 89701
Phone: (775) 684-3313 | TDD: (775) 687-8338 | Fax: (775) 684-3311

April 24, 2019

Julius Bradford
213 Sierra Breeze Ave
North Las Vegas, NV 89031

Dear Julius,

Enclosed you will find a certified copy of SB 2 from 1957. There are 8 pages total for the certified document.

Best,

Natacha Faillers

The Nevada State Library, Archives and Public Records

EXHIBIT D

EXHIBIT D

Julius Bradford #81604
High Desert State Prison
P.O. Box 650
Indian Springs, NV 89070
Defendant In Pro Se

FILED
SEP 06 2019
CLERK OF COURT

Eighth Judicial District Court
Clark County, Nevada

The State Of Nevada,
Plaintiff,
vs.
Julius Bradford,
Defendant.

Case No: C250928
Dept. No: 3
AFFIDAVIT OF JULIUS BRADFORD

# AFFIDAVIT OF JULIUS BRADFORD

Comes Now, the Defendant, Julius Bradford, who hereby states and swears the following:

1. My name is Julius Bradford, I am 34 years old, and I am currently incarcerated within the Nevada Department Of Corrections.

2. I realize that the majority of defendants who elect to waive counsel and represent themselves, do so either out of arrogance or a sense that the "system" is "out to get them". Which, more often than not, leads to them being extremely confrontational, even when it may be unwarranted and

RECEIVED
SEP 06 2019
CLERK OF THE COURT

unnecessary.

3. My motivations for electing to proceed In Pro Se are quite the contrary. I just needed to be able to speak for myself.

4. I understand the extraordinary nature of the current circumstances and the possible ramifications for the State of Nevada, not only from an adverse ruling, but also from any widespread dissemination of the infirmities found in 1957 Stat. Nev. Ch. 2.

5. I believe its both in my, and the State of Nevada's best interests that I provide this sworn statement.

6. I realize that a concern of the State of Nevada's may be that the aforementioned infirmities' potential to invalidate 1957 Stat. Nev. Ch. 2 may become common knowledge and cause a run on the courts. For this reason the State may find it prudent to feign indifference to challenges, so as to not "give credence" to any rumors concerning the issue.

7. As its not my desire to create the chaos that can arise from this issue, I decided to take this unprecedented step of not only formally disclosing it to the State of Nevada, but doing so in a format that holds me to it legally.

8. Im aware that 1957 Stat. Nev. Ch. 2 has been challenged before through Senate Bill No. 2 on at least 2 occasions; Gary Walters, Case No. C217569; and Eric Semrad.

9. Im aware of these challenges because I learned

about Senate Bill No. 2 from Eric Semrad, and I learned that he developed his argument based on a template he received from someone else, who had received it from Gary Walters.

10. To my knowledge, no one has ever put forth the argument in relation to Senate Bill No. 2/1957 Stat. Nev. Ch. 2 in the way that I have, and Im not interested in helping anyone to do so. That is why I have not disclosed the basis of my argument to any other inmate.

11. I haven't seen the documents filed in this Court by Gary Walters in November 2015, but I have seen the petition filed by Eric Semrad in Nov/Dec 2018 and the aforementioned template created by Gary Walters. Those documents, as written, are easily defended. However, these documents, which were shown to other people as well, are still out there. And it was upon these documents that I myself decided to at least dig into things. While I admit that the average person possibly wouldnt develop/present the argument that I have, the "possibility" will always remain if the State of Nevada doesnt fix it.

12. While researching this issue, I, myself recognized multiple ways which would have stopped me from pursuing any further. I also recognized ways, which are in harmony with the NV Constitution, that would effectively fix the problem.

13. I believe that its imperative for the State of Nevada to take action in this matter, because essentially risking everything each time the issue is raised, by relying on

a strategy of "hardball bluffing" will eventually fail. Even if the State were willing to gamble that they could persuade one or even two Courts to rule against clear Nevada and U.S. Supreme Court decisions regarding the enrolled bill rule, it can only go so far. Plus, its one thing to deny the petition of someone accused of a crime, but as this issue affects more than just laws related to criminal actions, it opens the State of Nevada to challenges by more formidable opponents. Civil actions brought by or against the State may be attacked. When its Walmart, CVS, Walgreens, Cardinal Health, or AmerisourceBergen who's challenging a statute, it becomes a completely different scenario. This is not in the interest of the State of Nevada, as it causes not only a financial loss, but it also undermines the faith of the citizenry in its elected officials.

14. I interpret NRS 220.170(1) as insinuating that the Director of the Statute Revision Commission certified that Nevada Revised Statutes was correctly copied from Senate Bill No. 2 (1957).

15. Upon information and belief, the Director of the Statute Revision Commission indeed certified such and that certification was fraudulent.

16. I believe that this act of fraud by the Director of the Statute Revision Commission, and by proxy the then sitting justices of the Nevada Supreme Court, would call all similar certifications into question.

17. The Statute Revision Commission's, and subsequently

Legislative Counsel Bureau's, omission of 1957 Stat. Nev. Ch. 2 from the legislative "HISTORY" section in Nevada Revised Statutes following the provisions of any citation it purportedly relates to, is troubling as it doesn't provide fair notice of where to look in the Statutes of Nevada in order to possibly rebut the citation.

18. Instead, obsolete statute laws that have been repealed are listed in a way that gives no indication that not only are they not a valid part of the legislative history; it also hints that they are the laws "amended" by legislation subsequent to 1957 Stat. Nev. Ch. 2.

19. Indeed, most of the legislation referred to in the previous paragraph is not found within the official Statutes of Nevada at all and therefore has no relation to Nevada Revised Statutes.

20. Fair notice is not given that these statute laws were repealed by 1957 Stat. Nev. Ch. 2. Equal protection would require the same notice listed with NRS 225.070 and others, be so listed.

21. I believe that public knowledge of the omission of 1957 Stat. Nev. Ch. 2 in the legislative "HISTORIES" found in Nevada Revised Statutes could call into question all listed "HISTORIES".

22. Its not far-fetched to believe that other legislation which relates to individual Nevada Revised Statutes citations could also be purposely omitted thereby rendering the citizenry without fair notice of where to find the evidence which may rebut the particular citation.

23. This erodes the faith and trust not only in Nevada Revised Statutes but also in the statute laws passed by the

Legislature itself. Especially since (formerly) NRS 218.310 only requires that the Nevada Revised Statutes citation of the statute law be referred to when being amended/revised, and not the complete title of the Act being amended/revised as mandated by the Nevada Constitution, declared by the Nevada Supreme Court in Hallock v State 19 Nev 384 (1887), and evinced by legislation contemporaneous with the construction of the Nevada Constitution.

24. With all of the above it becomes nigh impossible to know if you're seeing all of the statute law's provisions and legislative history in truth, or if something is being hidden by the Legislative Counsel Bureau, and therefore the State of Nevada.

25. I state all of this to make the State of Nevada aware of its precarious position and the necessitation of taking proactive steps to fix the issue.

26. While the infirmities may have remained concealed for a long time, its only a matter of time before someone sees what I have; and it makes no sense to be held hostage by a ticking time bomb when there are constitutionally congruent ways to address it once and for all. A multitude of ways actually.

27. As I've sought to represent myself going forward in these proceedings, I avail myself to direct communication with the State. Infact, I prefer that any communication intended for me be directed to me and that it does not go through "stand-by counsel" if such is appointed.

28. Further your Affiant sayeth naught.

EXECUTED this 2nd day of September, 2019.

[signature]
Julius Bradford

## VERIFICATION

I, Julius Bradford, do hereby swear under penalty of perjury that I am the affiant named above, that I have read the foregoing affidavit and know the contents thereof, that the same is true of my own knowledge, except those matters stated upon information and belief, and as to those matters, I believe them to be true.

Dated this 2nd day of September, 2019.

[signature]
Julius Bradford

## CERTIFICATE OF SERVICE

I, Julius Bradford, hereby certify that on or about the 2nd day of September, 2019, I caused to have mailed a true and correct copy of the foregoing Affidavit Of Julius Bradford to the following:

Giancarlo Pesci
Clark Co. Dist. Atty. Office
200 Lewis Avenue
Las Vegas, NV 89155

Aaron D. Ford; NV AG
Attorney General's Office
100 N. Carson Street
Carson City, NV 89701

[signature]
Julius Bradford #81604
HDSP; P.O. Box 650
Indian Springs, NV 89070

EXHIBIT E

EXHIBIT E

Julius Bradford #81604
High Desert State Prison
P.O. Box 650
Indian Springs, NV 89070
Defendant In Pro Se

FILED
NOV 27 2019
CLERK OF COURT

January 7, 2020
9:00 AM

Eighth Judicial District Court
Clark County, Nevada

| | |
|---|---|
| The State of Nevada, Plaintiff, vs. Julius Bradford, Defendant. | Case No. C250928<br>Dept No. 3<br>Motion For Entry Of Declaratory Judgment<br>Oral Argument Requested |

# Motion For Entry Of Declaratory Judgment

Comes Now, the Defendant, Julius Bradford, appearing in Pro Se, and hereby moves this Honorable Court to declare NRS 200.020 INVALID.

This Motion is made and based upon all the papers and pleadings on file herein, the attached points and authorities in support hereof, and the oral argument at the hearing.

## Points And Authorities

## I. Legal Argument

NRS 220.170(3) states that while the codified version "NRS" may be cited as prima facie evidence of the law, it "may be rebutted by proof that the statutes cited differ from the official Statutes

RECEIVED
NOV 27 2019
CLERK OF THE COURT

of Nevada. See Halverson v. Miller 124 Nev. 484 (2008)

① NRS 200.020 As Published In The Codified Version "NRS", Differs From The Official Statutes Of Nevada.

NRS 200.020 does not merely "differ" from the official Statutes of Nevada; its provisions are not found within any valid Act of the Nevada Legislature.

The Legislative "History" of the statute as published with NRS 200.020 in the codified version shows "CL1929 § 10067" as the law by which NRS 200.020 claims to be prima facie of. This proves NRS 200.020's invalidity in two separate ways.

Ⓐ CL1929 § 10067 is NOT an Act of the Legislature found within the official Statutes of Nevada, it is actually a previous codified version of the laws. Obviously NRS 200.020 cannot be prima facie of CL1929 § 10067, since CL1929 § 10067 itself is prima facie of a law.

Ⓑ Notwithstanding CL1929 § 10067 being a codified statute itself, the Act of the Legislature which it embodies was repealed in 1957, leaving even the Act without any legal force or effect.

In Stephan v. United States 319 US 423 (1943) the Court ruled on these exact same circumstances, where the law that gave force to the codified statute had been repealed, yet the citation remained published in the United States Code. The Court held that the very meaning of "prima facie" is that the codified version, U.S.C, could not prevail over the Statutes at Large if the two were inconsistent. That same authority holds true in the current situation; the codified version "NRS" cannot prevail over the Statutes of Nevada with the two being inconsistent. The Act of the Nevada Legislature that NRS 200.020 is purportedly

prima facie of, was repealed, therefore it is invalid. Because its provisions do not correlate with any law found in the official Statutes of Nevada.

## II. Conclusion

As NRS 200.020 has been rebutted by irrefutable evidence that there is no valid statute law in the official Statutes of Nevada which corresponds with its provisions, I have met my burden pursuant to both NRS 220.170(3), and the Nevada Supreme Court's ruling in Halverson v. Miller, supra.

For all of the foregoing reasons this Court should declare NRS 200.020 INVALID.

Dated this 23rd day of November, 2019.

Respectfully Submitted,

[signature]

Julius Bradford

## CERTIFICATE OF SERVICE

I hereby certify that on or about November, 23, 2019 I caused to be mailed a true and correct copy of the foregoing Motion For Entry of Declaratory Judgment to the following:

Attorney General
100 N. Carson St.
Carson City, NV 89701

[signature]

Julius Bradford #81604
HDSP; P.O. Box 650
Indian Springs, NV 89070
Defendant In Pro Se

**EXHIBIT F**

**EXHIBIT F**

Electronically Filed
1/2/2020 3:25 PM
Steven D. Grierson
CLERK OF THE COURT

OPPS

STEVEN B. WOLFSON
Clark County District Attorney
Nevada Bar #001565
GIANCARLO PESCI
Chief Deputy District Attorney
Nevada Bar #007135
200 Lewis Avenue
Las Vegas, Nevada 89155-2212
(702) 671-2500
Attorney for Plaintiff

DISTRICT COURT
CLARK COUNTY, NEVADA

THE STATE OF NEVADA,

Plaintiff,

-vs-

JULIUS BRADFORD,
#1900602

Defendant.

CASE NO: 09C250928

DEPT NO: III

**STATE'S OPPOSITION TO DEFENDANT'S MOTIONS FOR ENTRY OF DECLARATORY JUDGMENT**

DATE OF HEARING: JANUARY 8, 2020
TIME OF HEARING: 9:30AM

COMES NOW, the State of Nevada, by STEVEN B. WOLFSON, Clark County District Attorney, through GIANCARLO PESCI, Chief Deputy District Attorney, and hereby submits the attached Points and Authorities in Opposition to Defendant's Motions for Entry of Declaratory Judgment.

This Response is made and based upon all the papers and pleadings on file herein, the attached points and authorities in support hereof, and oral argument at the time of hearing, if deemed necessary by this Honorable Court.

**POINTS AND AUTHORITIES**

**STATEMENT OF THE CASE**

On January 7, 2009, JULIUS BRADFORD (hereinafter "Defendant") was charged by way of Information with MURDER WITH USE OF A DEADLY WEAPON (Category A

Felony – NRS 200.010, 200.030, 193.165). On January 30, 2009, the State filed its Notice of Intent to Seek the Death Penalty.

On January 27, 2009, the State filed a Notice of Motion and Motion to Consolidate Case No. C250928 into Case No. C193728. On February 17, 2009, Defendant filed a Notice of Conditional Non-Opposition to Consolidation. On March 30, 2009, the Court filed an Order Consolidating Case C250928 into Case C193728.

On May 19, 2010, Defendant filed a Motion to Dismiss for Undue and Prejudicial Delay. The State filed its Opposition on May 28, 2010. Defendant filed his Reply on June 14, 2010. On June 28, 2010, the Court entered its Order Denying Defendant's Motion to Dismiss for Undue and Prejudicial Delay.

On July 30, 2010, Defendant filed a Motion to Dismiss Death Penalty Request. The State filed its Opposition on August 20, 2010. Defendant filed his Reply on September 3, 2010. Defendant's motion was denied on September 9, 2010. On September 24, 2010, the State filed Notice of Evidence in Support of Aggravating Circumstances.

Jury trial commenced on July 16, 2012. On July 27, 2012, the jury returned a verdict of guilty of First Degree Murder with Use of a Deadly Weapon. The penalty hearing began on July 30, 2012. On August 1, 2012, the jury returned a verdict imposing a sentence of death.

On November 14, 2012, Defendant was sentenced to death. The Judgment of Conviction was filed that same day. On January 23, 2013, an Amended Judgment of Conviction was filed to include restitution.

On November 14, 2012, Defendant filed a Notice of Appeal. On November 30, 2017, the Nevada Supreme Court reversed and remanded Defendant's case based on dismissal of the venire panel prior to a Batson challenge being heard.

On July 31, 2019, Defendant filed a Motion to Dismiss Counsel. On September 5, 2019, the Court granted Defendant's motion and conducted a Faretta canvass. Defendant's request to represent himself was granted.

On September 6, 2019, Defendant filed the Motion to Dismiss for Lack of Jurisdiction. On September 19, 2019, the State filed a Response to Defendant's Motion to Dismiss for Lack

of Jurisdiction. On September 30, 2019, the Defendant filed his Reply to State's Response to Defendant's Motion to Dismiss for Lack of Jurisdiction. On October 2, 2019, the Defendant filed a Motion for Entry of Interlocutory Decree. On October 2, 2019, the Defendant filed a Motion for Return of Paid Restitution and Fees. On October 2, 2019, the Defendant filed a Motion for Clarification on Questions of Law. On October 2, 2019, the Defendant filed a Motion for Entry of Declaratory Judgment. On November 27, 2019, the Defendant filed another Motion for Entry of Declaratory Judgement. The State responds as follows:

## ARGUMENT

### I. THIS COURT HAS SUBJECT MATTER JURISDICTION.

In Defendant's motion he alleges that NRS 200.020 is invalid, arguing that it is not found within a valid act of the Nevada Legislature. The Defendant also argues that the "legislative history" shows CL1929 § 10067 but alleges that it is not an act of the legislature. Lastly, the Defendant argues, "Notwithstanding CL 1929 § 10067 being a codified statute itself, the Act of the Legislature which it embodies was repealed in 1957, leaving even the Act without any legal force or effect." (Defendant's Motion, Page 2, Lines 16-19).

In actuality, the history of the statute predates 1929. A review of the statute reveals that it goes back to 1911, with amendments occuring in 1915 and 1919. (1911 C&P § 120; A 1915, 67; 1919 RL § 6385; NCL § 10067). Defendant's argument that the statute was repealed in 1957 is a repeat of the arguments made in his earlier motions that have been denied by this Court. As argued previously by the State, contrary to the Defendant's previous arguments, the questioned language of the 1957 legislative session previously referenced by the Defendant reads as follows:

> Senate Bill No. 2–Committee on Judiciary
>
> CHAPTER 2
>
> AN ACT to revise the laws and statutes of the State of Nevada of a general or public nature; to adopt and enact such revised laws and statutes, to be known as the Nevada Revised Statutes, as the law of the State of Nevada; to repeal all prior laws and statutes of a general, public and permanent nature; providing penalties; and other matters relating thereto.
>
> [Approved January 25, 1957]

The People of the State of Nevada, represented in Senate and Assembly, do enact as follows:

Section 1. Enactment of Nevada Revised Statutes. The Nevada Revised Statutes, being the statute laws set forth after section 9 of this act, are hereby adopted and enacted as law of the State of Nevada.

Sec. 2. Designation and Citation. The Nevada Revised Statutes adopted and enacted into law by this act, and as hereafter amended and supplemented and printed and published pursuant to law, shall be known as Nevada Revised Statutes and may be cited as "NRS" followed by the number of the Title, chapter or section, as appropriate.

Sec. 3. Repeal of Prior Laws. Except as provided in section 5 of this act and unless expressly continued by specific provisions of Nevada Revised Statutes, all laws and statutes of the State of Nevada of a general, public and permanent nature enacted prior to January 21, 1957, hereby are repealed.

Sec. 4. Construction of Act.

1. The Nevada Revised Statutes, as enacted by this act, are intended to speak for themselves; and all sections of the Nevada Revised Statutes as so enacted shall be considered to speak as of the same date, except that in cases of conflict between two or more sections or of any ambiguity in a section, reference may be had to the acts from which the sections are derived, for the purpose of applying the rules of construction relating to repeal or amendment by implication or for the purpose of resolving the ambiguity.

2. The provisions of Nevada Revised Statutes as enacted by this act shall be considered as substituted in a continuing way for the provisions of the prior laws and statutes repealed by section 3 of this act.

3. The incorporation of initiated and referred measures is not to be deemed a legislative reenactment or amendment thereof, but only a mechanical inclusion thereof into the Nevada Revised Statutes.

4. The various analyses set out in Nevada Revised Statutes, constituting enumerations or lists of the Titles, chapters and sections of Nevada Revised Statutes, and the descriptive headings or catchlines immediately preceding or within the texts of individual sections, except the section numbers included in the headings or catchlines immediately preceding the texts of such sections, do not constitute part of the law. All derivation and other notes set out in Nevada Revised Statutes are given for the purpose of convenient reference, and do not constitute part of the law.

5. Whenever any reference is made to any portion of Nevada Revised Statutes or of any other law of this state or of the United States, such reference shall apply to all amendments and additions thereto now or hereafter made.

Sec. 5. Effect of Enactment of NRS and Repealing Clause.

1. The adoption and enactment of Nevada Revised Statutes shall not be construed to repeal or in any way affect or modify:

(a) Any special, local or temporary laws.

(b) Any law making an appropriation.

(c) Any law affecting any bond issue or by which any bond issue may have been authorized.

(d) The running of the statutes of limitations in force at the time this act becomes effective.

(e) The continued existence and operation of any department, agency or office heretofore legally established or held.

(f) Any bond of any public officer.

(g) Any taxes, fees, assessments or other charges incurred or imposed.

(h) Any statutes authorizing, ratifying, confirming, approving or accepting any compact or contract with any other state or with the United States or any agency or instrumentality thereof.

2. All laws, rights and obligations set forth in subsection 1 of this section shall continue and exist in all respects as if Nevada Revised Statutes had not been adopted and enacted.

3. The repeal of prior laws and statutes provided in section 3 of this act shall not affect any act done, or any cause of action accrued or established, nor any plea, defense, bar or matter subsisting before the time when such repeal shall take effect; but the proceedings in every case shall conform with the provisions of Nevada Revised Statutes.

4. All the provisions of laws and statutes repealed by section 3 of this act shall be deemed to have remained in force from the time when they began to take effect, so far as they may apply to any department, agency, office, or trust, or any transaction, or event, or any limitation, or any right, or obligation, or the construction of any contract already affected by such laws, notwithstanding the repeal of such provisions.

5. No fine, forfeiture or penalty incurred under laws or statutes existing prior to the time Nevada Revised Statutes take effect shall be affected by repeal of such existing laws or statutes, but the recovery of such fines and forfeitures and the enforcement of such penalties shall be effected as if the law or statute repealed had still remained in effect.

6. When an offense is committed prior to the time Nevada Revised Statutes take effect, the offender shall be punished under the law or statute in effect when the offense was committed.

7. No law or statute which heretofore has been repealed shall be revived by the repeal provided in section 3 of this act.

8. The repeal by section 3 of this act of a law or statute validating previous acts, contracts or transactions shall not affect the validity of such acts, contracts or transactions, but the same shall remain as valid as if there had been no such repeal.

9. If any provision of the Nevada Revised Statutes as enacted by this act, derived from an act that amended or repealed a preexisting statute, is held unconstitutional, the provisions of section 3 of this act shall not prevent the preexisting statute from being law if that appears to have been the intent of the legislature or the people.

Sec. 6. Severability of Provisions. If any provision of the Nevada Revised Statutes or amendments thereto, or the application thereof to any person, thing or circumstance is held invalid, such invalidity shall not affect the provisions or application of the Nevada Revised Statutes or such amendments that can be given effect without the invalid provision or application, and to this end the provisions of Nevada Revised Statutes and such amendments are declared to be severable.

Sec. 7. Effective Date. This act, and each and all of the laws and statutes herein contained and hereby enacted as the Nevada Revised Statutes, shall take effect upon passage and approval.

Sec. 8. Omission From Session Laws. The provisions of NRS 1.010 to 710.590, inclusive, appearing following section 9 of this act shall not be printed or included in the Statutes of Nevada as provided by NRS 218.500 and NRS 218.510; but

> there shall be inserted immediately following section 9 of this act the words: "(Here followed NRS 1.010 to 710.590, inclusive.)"
>
> Sec. 9. Content of Nevada Revised Statutes. The following laws and statutes attached hereto, consisting of NRS sections 1.010 to 710.590, inclusive, constitute the Nevada Revised Statutes:
>
> (Here followed NRS 1.010 to 710.590, inclusive.)

The bill clearly indicates that the content of the Nevada Revised Statutes, that were attached to the bill, included NRS 1.010 to NRS 710.590. Thus, all of the laws of the State of Nevada, comprising 1.010 to 710.590, including 200.020, were published, enacted, enrolled, codified, and not repealed.

Additionally, the Nevada Supreme Court has addressed NRS 200.020 76 times in various opinions going back to 1964 (Kuk v. State, 80 Nev. 291 (1964) to as recently as November 15, 2019 (Robbins v. State, 451 P.3d 897 Unpublished Disposition (November 15, 2019). In all of those opinions, the Court never once deemed NRS 200.020 to be invalid or unconstitutional. In fact, in Collman v. State, 116 Nev. 687 (2000), the Court specifically addressed the malice instruction that was given at trial, deeming it to be correct. Specifically, the Court stated:

> Pursuant to NRS 200.020, instruction number 10 correctly defined express malice as a "deliberate intention unlawfully to take away the life of a fellow creature, which is manifested by external circumstances capable of proof." Instruction number 10 also correctly stated that "[m]alice shall be implied when no considerable provocation appears, or when all the circumstances of the killing show an abandoned and malignant heart." Collman, at 723.

The instruction approved of by the Court in Collman is verbatim what is contained in NRS 200.020, which the Defendant erroneously alleges to be invalid. As the statute goes back to 1911, was codified by the legislature, was never repealed, and has been consistently upheld by the Nevada Supreme Court, the Defendant's Motion for Entry of Declaratory Judgement should be denied.

///

///

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Entry of Declaratory Judgement should be DENIED.

DATED this 2nd day of January, 2020.

Respectfully submitted,

STEVEN B. WOLFSON
Clark County District Attorney
Nevada Bar #001565

BY /s/GIANCARLO PESCI
GIANCARLO PESCI
Chief Deputy District Attorney
Nevada Bar #007135

## CERTIFICATE OF MAILING

I hereby certify that service of the above and foregoing was made this 2nd day of January, 2020, by depositing a copy in the U.S. Mail, postage pre-paid, addressed to:

JULIUS BRADFORD #81604
HIGH DESERT STATE PRISON
P.O. BOX 650
INDIAN SPRINGS, NV 89070-0650

BY /s/D. Daniels
Secretary for the District Attorney's Office

08F25105X/GP/dd-MVU

EXHIBIT 6

EXHIBIT 6

Julius Bradford #81604
High Desert State Prison
P.O. Box 650
Indian Springs, NV 89070
Defendant In Pro Se

FILED
JAN 27 2020
CLERK OF COURT

Eighth Judicial District Court
Clark County, Nevada

The State of Nevada,
Plaintiff,
vs.
Julius Bradford,
Defendant.

Case No. C250928
Dept No. 3
REPLY TO STATE'S OPPOSITION

# Defendant's Reply To State's Opposition To Defendant's Motion For Entry Of Declaratory Judgment

Comes Now, the Defendant, Julius Bradford, appearing in Pro Se, and hereby submits this Reply to the State's Opposition to Defendant's Motion For Entry Of Declaratory Judgment.

This Reply is made and based on the papers and pleadings on file herein, and the attached points and authorities in support hereof.

## Points And Authorities

## I. Legal Argument

### 1. The State Fails To Refute My Assertion That

RECEIVED
JAN 27 2020
CLERK OF THE COURT

"NRS 200.020" As Found In The Codified Version, "Nevada Revised Statutes", Is Not Valid As "Prima Facie" Pursuant to NRS 220.170(3).

The State's Opposition conspicuously avoids the actual challenge raised, which is that "NRS 200.020" is invalid as prima facie, based on the rulings of both Halverson v. Miller, 186 P.3d 893 (2008), and Stephan v. United States, 319 US 423 (1943).

NRS 220.170(3) holds that "NRS 200.020" is the codified version of the law, and that it "may be cited as prima facie evidence of the law in all of the courts of this State." However, it also states that NRS 200.020 can "be rebutted by proof that the [statute] cited [differs] from the official Statutes of Nevada."

The language of NRS 200.020 as found within the codified version, "Nevada Revised Statutes", holds as follows:

> 1. Express malice is that deliberate intention unlawfully to take away the life of a fellow creature, which is manifested by external circumstances capable of proof.
> 2. Malice shall be implied when no considerable provocation appears, or when all the circumstances of the killing show an abandoned and malignant heart.

I contend that these terms and provisions, this language defining "malice", is NOT found in the official Statutes of Nevada. Therefore "NRS 200.020" is rebutted as prima facie.

The Court in Halverson v. Miller, supra, at 895-896, made clear that it is the language, the terms and provisions, that matter when

comparing the codified version, Nevada Revised Statutes, against the official Statutes of Nevada. In that case the Court carefully compared the language of NRS 3.018 as found in the codified version, Nevada Revised Statutes, against what was provided in 2005 Statutes of Nevada, Ch. 436 §3.

It should be understood that the Court did NOT state that since the statute law 3.018 is found in the Statutes of Nevada, NRS 3.018 as found in the codified version, Nevada Revised Statutes, must be valid as "prima facie." Instead, they looked to the actual terms and provisions of the statute law 3.018 as prescribed by the Legislature within 2005 Statutes of Nevada, Ch. 436, and compared them to the codified version, NRS 3.018. The Court held that terms and provisions found ~~the~~ within the Statutes of Nevada rebutted the language of the codified statute, NRS 3.018.

The State fails to cite any law within the official Statutes of Nevada whose language is consistent with the terms and provisions found in the codified version, NRS 200.020, which purportedly defines malice.

Pursuant to NRS 220.170(3), I have met my burden in rebutting NRS 200.020 as prima facie, by showing that its language is not consistent with the official Statutes of Nevada.

2. The State Erroneously Cites 1957 Statutes Of Nevada, Chapter 2, As The Law That The Codified "NRS 200.020" Is Prima Facie Evidence Of.

The State asserts that 1957 Statutes of ~~the~~ Nevada, Chapter 2,

enacts the statute laws 1.010 to 710.590, pursuant to Section 9 of the Act. The State further asserts that as "200.020" would seem to fall within the range of 1.010 to 710.590, that a statute law known as 200.020 was also enacted by the Act. This argument fails both logically and constitutionally. Further it is belied by historical jurisprudence.

(A) Section 9 of 1957 Statutes of Nevada, Chapter 2's provision citing the statute laws 1.010 to 710.590, inclusive, as being enacted is "vague and uncertain". The citizenry is not afforded any guidance on how many statute laws this consists of, whether the sections are in single decimal increments, by tenths, hundredths, or if each Chapter only has sections that range from ".010 - .590". It only states "1.010 to 710.590, inclusive.", and nowhere else in the Act gives any additional insight on the actual scope of "1.010 to 710.590, inclusive".

Can it be inferred that there is a statute law "200.005" that was enacted by 1957 Statutes of Nevada, Chapter 2, since it falls within the range of 1.010 to 710.590, inclusive? Statute law 52.550? Statute law 52.010? Statute law 220.183? All of these fall within the range of 1.010 to 710.590, inclusive, so can it be contended that these are actual statute laws? No. There is no statute laws which are known by either "200.005", "52.550", "52.010", "220.183", but under the State's theory these are all statute laws enacted by 1957 Statute of Nevada, Chapter 2 since they technically are encompassed by "1.010 to 710.590, inclusive."

Just as absurd as it would be to proclaim either "200.005", "52.550", "52.010", or "220.183" as actual statute laws simply because they would seem to be encompassed by "1.010 to 710.590, inclusive"; it is equally absurd for the State to say the same for "200.020".

There is <u>NO</u> specific mention of "200.020" anywhere in the official Statutes of Nevada from 1864 to the present day. Other than happenstance in falling within the "vague and uncertain range of "1.010 to 710.590, inclusive", it cannot be said to be any way to infer an ~~ex~~ actual existence of 200.020 in the Statutes of Nevada.

(B) It should further be recognized that not every "available" increment between "1.010 to 710.590, inclusive", was enacted by 1957 Statutes of Nevada, Chapter 2. The following <u>statute laws</u> would "seem" to fall within the range of 1.010 to 710.590, inclusive, but were not enacted by the provisions of 1957 Statutes of Nevada, Chapter 2:

1. 193.165, enacted in 1973
2. 52.480, enacted by 1989 Stat. Nev. Ch 152
3. 202.585, enacted by 2007 Stat. Nev. Ch. 72
4. 202.760, enacted by 1971 Legislature
5. 228.710, enacted by 2009 Stat. Nev. Ch. 340
6. 228.412, enacted by 2001 Stat. Nev. Ch. 244

So the State's assertion that simply because "200.020" would "seem" to be encompassed within "1.010 to 710.590, inclusive", that it was enacted by 1957 Statutes of Nevada, Chapter 2 is absurd. Historical jurisprudence from 1957 until

now conclusively proves the State's claim to be wrong.

## 3. Even If There Was A Statute Law 200.020 Enacted By 1957 Statutes Of Nevada, Chapter 2, The Codified NRS 200.020 Is NOT Prima Facie Thereof

What is at issue in this instance is whether the codified version, NRS 200.020, is rebutted by what is found within the official Statutes of Nevada. That is it.

So even if the State asserts that 1957 Statutes of Nevada, Chapter 2 is the law that the codified NRS 200.020, is prima facie evidence of, there is still NO definition of malice found within that Act. Once again, the language found in the codified version, NRS 200.020, is NOT supported as prima facie by the provisions of 1957 Statutes of Nevada, Chapter 2.

The terms/provisions of the codified version, NRS 200.020, as set forth, supra, are not found within the official Statutes of Nevada and are therefore, rebutted as prima facie.

NRS 220.170 clearly and unambiguously provides that any citation within the codified version, "Nevada Revised Statutes" MUST correlate with provisions that are found in the official Statutes of Nevada.

The State asserts that the provisions found in the codified version, NRS 200.020, goes back over a century, yet they fail to SHOW anywhere in the official Statutes of Nevada that supports NRS 200.020 as prima facie.

The State also refers to an "attachment" to 1957 Statutes of Nevada, Chapter 2, but does not provide it. Where is it at? If this is where the State alleges

the actual statute law defining malice is to be found then it should be provided. Because the Act as published in the Statutes of Nevada does not define "malice", and it is not the job of this Court "to insert missing terms into the statute." See Foti v. City of Menlo Park, 146 F.3d 629, at 639 (9th Cir. 1998)

I have shown conclusively that the language found in the codified version, NRS 200.020, is not found within the official Statutes of Nevada. My constitutional right to the equal protection of the laws as guaranteed by the 14th Amendment to the United States Constitution should afford me the equal right to rebut NRS 200.020 as prima facie pursuant to NRS 220.170.

It should be noted by this Court that Section 8 of 1957 Statutes of Nevada, Chapter 2 expressly forbids any of the statute laws it enacted from being published in the Statutes of Nevada. The Due Process essentials of "fair notice" and "opportunity" would be violated by any of those statute laws being codified since there would be nowhere to look to rebut the codified version as prima facie, thus denying "fair notice" of the actual language provided by the Legislature, which therefore denies any "opportunity" to challenge the codified version in the manner prescribed by NRS 220.170(3)

4. Historical Usage By The Courts Of The Codified Version, NRS 200.020, As Prima Facie Does NOT Necessarily Affirm Its Validity/Constitutionality.

The State asserts that the codified version, NRS 200.020,

has been referred to by the Nevada Supreme Court on numerous occasions over the years. I do not dispute that. However, none of those opinions concerned a challenge to the validity of the codified, NRS 200.020, as prima facie evidence of the law.

In fact, the codified version, NRS 200.020, has never been previously challenged pursuant to the provisions of NRS 220.170(3). I am the first person to assert that the language of NRS 200.020 as found in the codified version, "Nevada Revised Statutes", is NOT reflected in the official Statutes of Nevada.

It is a well-known principle that statutes are presumed to be constitutional/valid. All courts are required to regard them as such, until, and unless, they are challenged and proven to be unconstitutional/invalid. Since the codified version, NRS 200.020, has heretofore never been challenged on the basis that its terms and provisions are rebutted by what is found, or rather NOT found, within the official Statutes of Nevada, then the courts have been required to use it. So this Court's, and the Nevada Supreme Court's, historical usage of the codified version, NRS 200.020, should in no way factor when the "presumption" of validity has been rebutted by my clear showing of its invalidity.

For years and years this Court sentenced juveniles to life sentences without the possibility of parole and the Nevada Supreme Court upheld those sentences. Neither this Court nor the Nevada Supreme Court was in error at the time for doing so, because

the law authorizing such was presumed to be constitutional. It was not until the principle of the law was challenged that it became in question as constitutional. And it is the same when it comes to the codified version, NRS 200.020's, validity as prima facie. For the first time it is being challenged pursuant to the provisions of NRS 220.170(3), and this Court should follow the procedural due process set forth in Halverson v. Miller, supra, in deciding whether it is valid as prima facie evidence of a law found in the official Statutes of Nevada.

## II Conclusion

The rules of lenity in interpreting criminal statutes would support that when attempting to rebut the codified version, NRS 200.020, as prima facie, the provisions of NRS 220.170(3) should be construed strictly when it comes to what "is found in the official Statutes of Nevada." If the language of the codified version, NRS 200.020, is not found published in the official Statutes of Nevada then this Court should declare the codified version, NRS 200.020, INVALID as prima facie evidence of the law.

For all of the foregoing reasons this Court should GRANT my Motion For Entry Of Declaratory Judgment.

Dated this 19th day of January, 2020.

Respectfully Submitted,

[signature]

Julius Bradford

Julius Bradford
High Desert State Prison
P.O. Box 650
Indian Springs, NV 89070
NDOC #81604

United States District Court
District Of Nevada

Julius Bradford,
Plaintiff,
vs.
Steve Sisolak, et al.,
Defendants.

Case No. 2:20-cv-00871-APG-BNW

Exhibit "A" - Submitted Pursuant To Local Rule 10-3(c)

EXHIBIT "A" - Submitted Pursuant To Local Rule 10-3(c)

Pursuant to the provisions of LR 10-3(c), this Exhibit is identified as: "EXHIBIT 'A' - Certified Copy of the Attested Enrolled Senate Bill No. 2 (1957)"

1. The document consists of (8) pages, which are bound together with a seal, in a manner intended to authenticate the document.

2. The document also contains written certification on its face from an Archivist employed by the Nevada State Library, Archives and Public Records, the state agency which has custody of the record.

3. This Exhibit relates to my Declaration In Support Of Plaintiffs Motion For Entry Of Preliminary Injunction. See Declaration, Paragraph 8.

Dated: 7-13-2020

Respectfully Submitted,

Julius Bradford

CHAPTER 2

NEVADA STATE LIBRARY
ARCHIVES AND PUBLIC RECORDS
I hereby certify that this is an accurate and complete copy of the Original, now on file and of record at Archives and Records
On this 4th day of June 20 19
Jeffrey Kintop
Administrator
By: Natasha Failen

STATE OF NEVADA
EXECUTIVE DEPARTMENT

RECEIVED

Date Jan 23, 1957.

Hour 10:47 A.M.

No. of Sheets One

Time Limit for Action by Governor

Expires on Jan. 28, 1957

Parker Liddell
Secretary to Governor.

STATE OF NEVADA
OFFICE OF SECRETARY OF STATE

RECEIVED AND FILED

Date 1957

Hour 1:10 P.M.

John Koontz
Secretary of State.

By Minnie Fiedler
Receiving Clerk.

SENATE BILL NO. 2

Rex Bell
President of the Senate.

H. E. Rowntree
Secretary of the Senate.

Wm D Swackhamer
Speaker of the Assembly.

C. A. Barham
Chief Clerk of the Assembly.

STATE OF NEVADA
EXECUTIVE DEPARTMENT

APPROVED

Date January 25, 1957

Hour 10:25 a.m.

Charles H. Russell
Governor.

APPROVED: ........................................................M. CHAP. No.................
Date Hour

SENATE BILL ~~RESOLUTION~~ No. 2

Introduced by Senator.... Committee on Judiciary

.................................................................................................

JAN 22 1957 —Read first time. Referred to..................Committee on/of

.................................................................. To printer.

..........................—From printer. To committee.

..........................—Withdrawn from committee. Re-referred to Committee

on..........................................................................

..........................—From committee: Amend, and do pass as amended.

..........................—From committee: Re-refer to Committee on..................

..........................................................................

..........................—From committee: Without recommendation.

..........................—From committee: Do..................pass.

..........................—Re-referred to Committee on..................................

..........................................................................

..........................—From committee:

..........................—From majority committee:

..........................—From minority committee:

..........................—Read second time. To engrossment.

..........................—Read second time. Amended. Reprinting dispensed with. To engrossment.

..........................—Read second time. Amended. To printer.

..........................—From printer. To engrossment.

..........................—[redacted] Engrossed.

S Form 64a (Bill Cover) 315

—Read third time. Amended. To printer.

—From printer. To re-engrossment.

—~~Reported correctly~~ re-engrossed.

—Re-referred to Committee on

—From committee:

JAN 22 1957 —All rules suspended. Bill considered engrossed, declared an emergency measure under the Constitution, and placed on third reading and final passage.

—Read third time. Amended. Reprinting dispensed with. Passed, as amended. Title approved. To re-engrossment.

—~~Reported correctly~~ re-engrossed. To Assembly.

JAN 22 1957 — Read third time. Passed.

Title approved. To Assembly.

Assistant Secretary

☐ Check here if amendments are stapled to back of bill.

## In Assembly

JAN 23 1957 —Read first time. Referred to Committee on/of To committee.

—From committee: Do pass.

—Read second time.

—From committee: Amend, and do pass as amended.

—Read second time. Amended. Reprinting dispensed with. To re-engrossment.

—Read second time. Amended. To printer.

—Read third time. Amended. To printer.

—From printer. To re-engrossment.

—~~Reported correctly~~ re-engrossed.

JAN 23 1957 —All rules suspended. Bill considered engrossed, declared an emergency measure under the Constitution, and placed on third reading and final passage.

—Read third time. Amended. Reprinting dispensed with. Passed, as amended. Title approved. To re-engrossment.

—Reported ~~correctly~~ re-engrossed. To Senate.

JAN 23 1957 —Read third time. Passed.

Title approved. To Senate.

Assistant Chief Clerk

☐ Check here if amendments are stapled to back of bill.

S Form 64b (Bill Cover)

# IN SENATE

..........................—Assembly amendments..........................concurred in.

JAN 24 1957—To enrollment, IN ACCORDANCE WITH THE PROVISIONS OF SENATE CONCURRENT RESOLUTION No. 1.

[illegible signature]
Secretary

..........................—~~Received in Committee on Engrossed and Enrolled Bills.~~

JAN 25 1957—Enrolled and delivered to Governor.

..........................—Enrolled and delivered to Secretary of State.

Mary Corlett
~~Chairman, Committee on Engrossed and Enrolled Bills~~
[illegible] Clerk

SUMMARY--Enacts Nevada Revised Statutes as the law of the State of Nevada to supersede all prior laws of a general, public and permanent nature.

AN ACT to revise the laws and statutes of the State of Nevada of a general or public nature; to adopt and enact such revised laws and statutes, to be known as the Nevada Revised Statutes, as the law of the State of Nevada; to repeal all prior laws and statutes of a general, public and permanent nature; providing penalties; and other matters relating thereto.

THE PEOPLE OF THE STATE OF NEVADA, REPRESENTED IN SENATE AND ASSEMBLY, DO ENACT AS FOLLOWS:

Section 1. Enactment of Nevada Revised Statutes. The Nevada Revised Statutes, being the statute laws set forth after section 9 of this act, are hereby adopted and enacted as law of the State of Nevada.

Sec. 2. Designation and Citation. The Nevada Revised Statutes adopted and enacted into law by this act, and as hereafter amended and supplemented and printed and published pursuant to law, shall be known as Nevada Revised Statutes and may be cited as "NRS" followed by the number of the Title, chapter or section, as appropriate.

Sec. 3. Repeal of Prior Laws. Except as provided in section 5 of this act and unless expressly continued by specific provisions of Nevada Revised Statutes, all laws and statutes of the State of Nevada of a general, public and permanent nature enacted prior to January 21, 1957, hereby are repealed.

Sec. 4. Construction of Act.

1. The Nevada Revised Statutes, as enacted by this act, are intended to speak for themselves; and all sections of the Nevada Revised Statutes as so enacted shall be considered to speak as of the same date, except that in cases of conflict between two or more sections or of any ambiguity in a section, reference may be had to the acts from which the sections are derived, for the purpose of applying the rules of construction relating to repeal or amendment by implication or for the purpose of resolving the ambiguity.

2. The provisions of Nevada Revised Statutes as enacted by this act shall be considered as substituted in a continuing way for the

provisions of the prior laws and statutes repealed by section 3 of this act.

3. The incorporation of initiated and referred measures is not to be deemed a legislative reenactment or amendment thereof, but only a mechanical inclusion thereof into the Nevada Revised Statutes.

4. The various analyses set out in Nevada Revised Statutes, constituting enumerations or lists of the Titles, chapters and sections of Nevada Revised Statutes, and the descriptive headings or catchlines immediately preceding or within the texts of individual sections, except the section numbers included in the headings or catchlines immediately preceding the texts of such sections, do not constitute part of the law. All derivation and other notes set out in Nevada Revised Statutes are given for the purpose of convenient reference, and do not constitute part of the law.

5. Whenever any reference is made to any portion of Nevada Revised Statutes or of any other law of this state or of the United States, such reference shall apply to all amendments and additions thereto now or hereafter made.

Sec. 5. Effect of Enactment of NRS and Repealing Clause.

1. The adoption and enactment of Nevada Revised Statutes shall not be construed to repeal or in any way affect or modify:

(a) Any special, local or temporary laws.

(b) Any law making an appropriation.

(c) Any law affecting any bond issue or by which any bond issue may have been authorized.

(d) The running of the statutes of limitations in force at the time this act becomes effective.

(e) The continued existence and operation of any department, agency or office heretofore legally established or held.

(f) Any bond of any public officer.

(g) Any taxes, fees, assessments or other charges incurred or imposed.

(h) Any statutes authorizing, ratifying, confirming, approving or accepting any compact or contract with any other state or with the United States or any agency or instrumentality thereof.

2. All laws, rights and obligations set forth in subsection 1 of this section shall continue and exist in all respects as if Nevada Revised Statutes had not been adopted and enacted.

3. The repeal of prior laws and statutes provided in section 3 of this act shall not affect any act done, or any cause of action accrued or established, nor any plea, defense, bar or matter subsisting before the time when such repeal shall take effect; but the proceedings in every case shall conform with the provisions of Nevada Revised Statutes.

4. All the provisions of laws and statutes repealed by section 3 of this act shall be deemed to have remained in force from the time when they began to take effect, so far as they may apply to any department, agency, office, or trust, or any transaction, or event, or any limitation, or any right, or obligation, or the construction of any contract already affected by such laws, notwithstanding the repeal of such provisions.

5. No fine, forfeiture or penalty incurred under laws or statutes existing prior to the time Nevada Revised Statutes take effect shall be affected by repeal of such existing laws or statutes, but the recovery of such fines and forfeitures and the enforcement of such penalties shall be effected as if the law or statute repealed had still remained in effect.

6. When an offense is committed prior to the time Nevada Revised Statutes take effect, the offender shall be punished under the law or statute in effect when the offense was committed.

7. No law or statute which heretofore has been repealed shall be revived by the repeal provided in section 3 of this act.

8. The repeal by section 3 of this act of a law or statute validating previous acts, contracts or transactions shall not affect the validity of such acts, contracts or transactions, but the same shall remain as valid as if there had been no such repeal.

9. If any provision of the Nevada Revised Statutes as enacted by this act, derived from an act that amended or repealed a preexisting statute, is held unconstitutional, the provisions of section 3 of this act shall not prevent the preexisting statute from being law if that

appears to have been the intent of the legislature or the people.

Sec. 6. Severability of Provisions. If any provision of the Nevada Revised Statutes or amendments thereto, or the application thereof to any person, thing or circumstance is held invalid, such invalidity shall not affect the provisions or application of the Nevada Revised Statutes or such amendments that can be given effect without the invalid provision or application, and to this end the provisions of Nevada Revised Statutes and such amendments are declared to be severable.

Sec. 7. Effective Date. This act, and each and all of the laws and statutes herein contained and hereby enacted as the Nevada Revised Statutes, shall take effect upon passage and approval.

Sec. 8. Omission From Session Laws. The provisions of NRS 1.010 to 710.590, inclusive, appearing following section 9 of this act shall not be printed or included in the Statutes of Nevada as provided by NRS 218.500 and NRS 218.510; but there shall be inserted immediately following section 9 of this act the words: "(Here followed NRS 1.010 to 710.590, inclusive.)"

Sec. 9. Content of Nevada Revised Statutes. The following laws and statutes attached hereto, consisting of NRS sections 1.010 to 710.590, inclusive, constitute the Nevada Revised Statutes:

Julius Bradford
High Desert State Prison
P.O. Box 650
Indian Springs, NV 89070
NDOC # 81604

FILED
ENTERED
RECEIVED
SERVED ON
COUNSEL/PARTIES OF RECORD
JUL 20 2020
CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: DEPUTY

United States District Court
District Of Nevada

Julius Bradford,
Plaintiff,
vs.
Steve Sisolak, et al.,
Defendants.

Case No. 2:20-cv-00871-APG-BNW

Notice Of Exhibit Submitted Pursuant To Local Rule 10-3(c)

Notice Of "EXHIBIT 'A'" - Submitted Pursuant To Local Rule 10-3(c)

PLEASE TAKE NOTICE, due to the nature of the document and the inability to reproduce all of its unique properties in a copy, Plaintiff did NOT serve a copy of "EXHIBIT 'A'" - Submitted Pursuant to LR 10-3(c) - upon the Defendants.

HOWEVER, Plaintiff has attached to this Notice a copy of the captioned cover sheet which identifies the document submitted to this Court, pursuant to LR 10-3(c), as EXHIBIT 'A'.

Dated: 7-13-2020

By: [signature]
Julius Bradford

# Certificate Of Service

I hereby certify that on or about the 16th day of July, 2020, I caused to have mailed a true and correct copy of the foregoing "Notice Of EXHIBIT 'A' - Submitted Pursuant To LR 10-3(c)", along with a copy of the captioned cover sheet titled "EXHIBIT 'A' - Submitted Pursuant To Local Rule 10-3(c)", which identifies the document submitted as "EXHIBIT 'A'", to the following:

Aaron D. Ford
100 N. Carson St.
Carson City, NV 89701

Steve Sisolak
State Capitol Building
101 N. Carson St.
Carson City, NV 89701

Board Of Commissioners
Clark County Govt. Center
500 S. Grand Central Pkwy, 2nd Floor
Las Vegas, NV 89155

Steven B. Wolfson
Clark Co. Dist. Atty.
200 Lewis Ave.
Las Vegas, NV 89155

Julius Bradford

Julius Bradford
High Desert State Prison
P.O. Box 650
Indian Springs, NV 89070
NDOC #81604

United States District Court
District Of Nevada

Julius Bradford,
Plaintiff,
vs.
Steve Sisolak, et al.,
Defendants.

Case No. 2:20-cv-00871-APG-BNW

Memorandum Of Law

Memorandum Of Law In Support Of Plaintiff's Motion For Entry Of Preliminary Injunction

I. Statement Of The Case

This is an action brought pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201, challenging the constitutionality of both NRS 220.170(3) and Senate Bill No. 2 (1957), and seeking redress for the arbitrary enforcement thereof. In this Motion For Entry Of Preliminary Injunction, Plaintiff limits his focus solely to Section 9 of Senate Bill No. 2 (1957), and Section 9 of the Act as published, 1957 Statutes of Nevada, Chapter 2.

Plaintiff seeks an injunction enjoining the Defendants from citing and/or pleading Section 9 of the Act as enrolled or published as the law(s) which any statute in the NRS-Code purports

to codify or be prima facie evidence of; in addition to enjoining the Defendants from enforcing Section 9 of the Act, both as published and enrolled.

## II. Statement Of Facts

As stated in the Declaration submitted with this Motion, Plaintiff has obtained a Certified copy of the attested enrolled Senate Bill No. 2, from 1957, as approved by the Governor and deposited in the state archives. (Declaration, at Paragraphs 3-7)

The attested enrolled Senate Bill No. 2 (1957) does not enumerate any statute laws, or terms and provisions thereof, either within, or following, Section 9 of the Act. A certified copy of the attested enrolled Senate Bill No. 2 (1957) has been submitted for this Court's inspection. (Declaration at Paragraphs 8-9; see also FRCP 44(a)(1)(B)(ii); Fed. R. Evid. Rule 902(1)(A);)

Although the language of NRS 220.170(3), which states that the NRS-Code will "constitute the official codified version of Statutes of Nevada", and the provisions of Section 8 of Senate Bill No. 2 (1957) which state that "the provisions of NRS 1.010 to 710.590, inclusive, appearing following Section 9 of this act shall not be printed or included in the Statutes of Nevada", clearly make it unlawful for the NRS-Code to codify or be prima facie of Section 9 of Senate Bill No. 2 (1957), the Defendants and their subordinates have still pleaded certain statutes in the NRS-Code as prima facie of Section 9 of Senate Bill No. 2 (1957). (Declaration, at Paragraphs 12-16)

Notwithstanding that fact, no statute in the NRS-Code even purports to codify or be prima facie of Senate Bill No. 2 (1957). The argument was concocted and pleaded in bad faith, with

zero basis either in law or fact. It is clearly based on an indisputably meritless legal theory; legally impossible.

Plaintiff has asserted that Section 9 of both Senate Bill No. 2 (1957) and 1957 Statutes of Nevada, Chapter 2, list NO terms or provisions for the statute laws "1.010 to 710.590, inclusive"; thereby asserting that "no set of circumstances [exist] under which [Section 9 of the Act] would be valid", pursuant to the facial challenge standard from U.S. v. Salerno, 481 US 739 (1987). (Declaration, at Paragraph 9; see also Complaint, at Paragraphs 339-351, 356-364)

There are over 100 statutes in the NRS-Code, in sections NRS 193.010 to NRS 207.520 alone, which on their face do not purport to codify or be prima facie of any valid law found in the Statutes of Nevada. These statutes all relate to crimes, their elements, definitions, and punishments. (Declaration, at Paragraph 18)

## III. Legal Argument

A Plaintiff seeking a preliminary injunction must establish; (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. See Winter v. National Resources Defense Council, Inc., 555 US 7, at 20, (2008); Sierra Forest Legacy v. Rey, 577 F.3d 1015, 1021 (9th Cir. 2009).

Point 1 and Point 2 herein, infra, establish this criteria in ways that are independent of each other, but also serve to bolster the other.

Point 3 herein, infra, emphasizes how narrowly drawn the sought after injunction would be. Because while this action has been brought with the ultimate goal of having

"the Act" (Senate Bill No. 2 (1957) and 1957 Statutes of Nevada, Chapter 2, collectively) declared unconstitutional, the sought after injunction ONLY implicates Section 9 of the Act.

## POINT 1

### The Defendants Should Be Enjoined From Citing Or Pleading Section 9 of the Act As The Law Which Any Statute In The NRS-Code Purports To Codify Or Be Prima Facie Of.

1. Plaintiff hereby incorporates by reference my Complaint (Document 1-1), and all paragraphs therein, as if fully set forth herein.

### A. Plaintiff Is Likely To Succeed On The Merits

2. Citing or pleading Section 9 of the Act as the law that any statute in the NRS-Code purports to codify or be prima facie of is repugnant to both Section 8 of the Act and NRS 220.170(3).

3. There are several reasons which lawfully, and standing alone, are basis for finding that an injunction is appropriate at this time. They are offered alternatively to, as well as collectively with, one another.

#### 1. The NRS-Code Does Not Purport To Codify Section 9 Of The Act

4. There is not a single statute in the NRS-Code which lists either Section 9 of Senate Bill No. 2 (1957) (hereinafter "SB 2"), or Section 9 of 1957 Statutes of Nevada, Chapter 2 (hereinafter "1957 Stat. Nev. Ch. 2"), in its "HISTORY" as the law it purports to codify or be prima facie of.

5. In fact, it would be unlawful for the NRS-Code to codify or be prima facie of Section 9 of the Act, due to the limitations of NRS 220.170(3).

#### 2. The Limitations Of NRS 220.170(3)

6. There are two substantive predicates within NRS 220.170(3), which operate to limit; ⓐ the scope of the NRS-Code; and ⓑ the means and method by which the NRS-Code can be rebutted as prima facie.

7. The language of NRS 220.170(3) would seem to preclude any relation between the NRS-Code and Section 9 of the Act, when looked at in conjunction with Section 8 of the Act. "Statutory interpretation begins with the statutory text," BedRoc Ltd., LLC v. United States, 541 US 176, at 183 (2004).

a. The Scope Of The NRS-Code Pursuant To NRS 220.170(3).

8. NRS 220.170(3) provides that the NRS-Code will "constitute the official codified version of Statutes of Nevada." (Emphasis added) This limits the NRS-Code to ONLY codifying what is included in the Statutes of Nevada.

9. Section 8 of the Act expressly prohibits the provisions of "Section 9 of this Act from being "printed or included in the Statutes of Nevada."

10. Ipso facto, the NRS-Code cannot lawfully codify Section 9 of the Act. And again, the NRS-Code itself does NOT purport to do so.

b. The Procedure And Means To Rebut/Verify The NRS-Code Pursuant To NRS 220.170(3)

11. NRS 220.170(3) provides that the NRS-Code can "be rebutted by proof that the statutes cited differ from the official Statutes of Nevada." (Emphasis Added) This requires the challenger to look no further than the Statutes of Nevada. Creating therein a property interest, and attendant procedure.

12. This language does not allow any instrument other than the Statutes of Nevada. It does not provide any loopholes, nor does it allow even a choice between the Statutes of Nevada and an enrolled bill. It specifically states the Statutes of Nevada, and that alone. It states how and when the NRS-Code can be rebutted.

13. This language excludes Section 9 of SB2 from being pleaded once the NRS-Code is rebutted by the Statutes of Nevada.

14. Further, as detailed herein, *infra*, the attested enrolled SB2 lists no terms or provisions for any statute laws following Section 9 of the Act. So there is nothing for the NRS-Code to codify even without the statutory limitation of NRS 220.170(3) in relation to Section 8 of the Act.

<u>B. Plaintiff Is Likely To Suffer Irreparable Harm Absent An Injunction</u>

15. The two substantive predicates within NRS 220.170(3), as described herein, create liberty interests. These state-created liberty interests are; ① The NRS-Code will only codify laws which are included in Statutes of Nevada; ② the distinct process by which the NRS-Code can be rebutted as prima facie; and ③ the sole and absolute instrument, the official Statutes of Nevada, by which the NRS-Code will be either rebutted or upheld as prima facie.

16. The pleading of Section 9 of SB2, by the Defendants and/or their subordinates, in relation to a challenge/rebuttal brought pursuant to NRS 220.170(3) intends to deprive myself and other citizens of our liberty interest in having to look no further than the official Statutes of Nevada when seeking to rebut the NRS-Code as prima facie.

17. Additionally, the bad faith pleading of Section 9 of SB2 deprives me of the rebuttal process specified by NRS 220.170(3). "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" <u>Melendres v. Arpaio</u>, 695 F.3d 990, at 1002 (9th Cir. 2012) citing, <u>Elrod v. Burns</u>, 427 US 347, at 373 (1976). See also <u>Logan v. Zimmerman Brush Co.</u>, 455 US 422, 430-431 (1982).

<u>1. The "Process That Is Due" Pursuant To NRS 220.170(3)</u>

18. The pleading of Section 9 of SB2 renders the rebuttal procedure provided by NRS 220.170(3) "inadequate to the point that it is

meaningless or nonexistent." ~~See~~ Cf. Easter House v. Felder, 910 F.2d 1387, at 1406 (7th Cir 1990) (en banc). The purpose of providing the Statutes of Nevada as the definitive authority, was to ensure a process that was certain. The intent of the faint pleader is to take that away.

19. It cannot be overstated that the only instance in which Section 9 of SB2 will be pleaded by the Defendants, or the subordinates thereof, is when someone tries to challenge/rebut a statute in the NRS-Code that does NOT purport to codify a law in the Statutes of Nevada.

20. At that point there is already a deprivation of the liberty interest created by NRS 220.170(3); that the NRS-Code will only codify the Statutes of Nevada.

21. So pleading Section 9 of SB2 seeks to continue that deprivation, AND deprive the challenger of the post-deprivation remedy; which is the rebuttal procedure of NRS 220.170(3). This causes substantial prejudice because it not only conflicts with the procedural prerequisites for fairness, but attempts to do away with them all together.

2. Likelihood Of Recurrence

22. The Defendants have enforced these statutes in the NRS-Code which on their face purport to codify laws which have been repealed and/or are not found in the Statutes of Nevada, for years, knowing they exceed the scope of NRS 220.170(3). See Complaint; Paragraphs 433-441. See also Honey v Distelrath, 195 F.3d 531, at 534 (9th Cir. 1999)

23. I have no reason to believe that, based on the pleading of Section 9 of SB2 in response to my challenge/rebuttal, this is, or will be, the only time it is used by the Defendants in this manner.

24. The Defendants' policy and pattern of officially sanctioned

unlawful behavior, in addition to my intent to challenge NRS 195.020 as prima facie, make it sufficiently likely that Section 9 of SB2 will be pleaded again. See Mayfield v. United States, 599 F.3d 964, at 970-971 (9th Cir 2010).

3. The "Chilling Effect"

25. The way it has been shown that Defendant Wolfson, and/or his deputies, arbitrarily use Section 9 of SB2 to repel legitimate challenges to certain statutes in the NRS-Code, raises the question of not only "is this the first time"; but also of how many people have been intimidated into not exercising their First and Fourteenth Amendment rights to challenge the statutes in the NRS-Code, based on the assumption that they could not overcome his pleading of Section 9 of SB2.

26. Even knowing that NRS 195.020 does not codify any law in the Statutes of Nevada and that I can prove it; I am still reluctant to bring the challenge pursuant to NRS 220.170(3) because I believe that Section 9 of SB2 will be pleaded with the intent of depriving me of a fair hearing. "The loss of First Amendment freedoms for even minimal periods of time, unquestionably constitutes irreparable injury." See Thalheimer v. City of San Diego, 645 F.3d 1109, at 1128 (9th Cir. 2011); See Complaint, Paragraphs 444-446.

27. The pleading of Section 9 of SB2 intimidates challengers from resorting to the Courts to test the validity of the described infirm statutes in the NRS-Code, which has the same result as if NRS 220.170(3) in terms prohibited any challenge. But NRS 220.170(3) DOES allow challenges, and the pleading of Section 9 of SB2 denies the equal protection of the law.

C. Balance Of Equities

28. The Defendants' cannot suffer harm from an injunction

that merely ends an unlawful practice. See Rodriguez v. Robbins, 715 F.3d 1127, at 1145 (9th Cir. 2013) NRS 220.170(3) does not allow for ~~either~~ the pleading of Section 9 of SB2 in relation to a challenge to the NRS-Code, pursuant to its terms. Nor does any statute in the NRS-Code purport to codify, or be prima facie of Section 9 of SB2.

29. The Defendants' ability to enforce the statutes in the NRS-Code is not impaired in any way.

30. The Defendants are able to plead ~~to~~ any applicable law in the official Statutes of Nevada, which is what NRS 220.170(3) mandates, so there is no harm in restricting them from pleading Section 9 of SB2 in bad faith.

31. The Defendants cannot be harmed by restricting them from ~~prevents them from~~ attempting to deprive me and/or any other citizen of the liberty interests, equal protection, substantive due process, and procedural due process, created and guaranteed by NRS 220.170(3), and the Fourteenth Amendment to the United States Constitution. See also Zepeda v. INS, 753 F.2d 719, at 727 (9th Cir. 1983) "cannot reasonably assert that they are harmed in any legally cognizable sense by being enjoined from constitutional violations." Id.

D. Preliminary Injunction Is In Public Interest

32. It stands to reason that the public interest also benefits from a preliminary injunction that ensures that NRS 220.170(3) is implemented, and its terms adhered to, in a manner that avoids serious constitutional questions.

33. When any citizen is impeded or frustrated in rebutting and/or challenging statutes in the NRS-Code, by bad faith pleadings that completely disregard the express terms, limits, and procedure

prescribed by NRS 220.170(3), it is in the public interest to ensure that the practice is stopped.

34. It is in the public interest to ensure that the Defendants do not exceed the scope of NRS 220.170(3) when it suits them to do so.

35. It is in the public interest to be able to look to the official Statutes of Nevada, and no further, when seeking to challenge/rebut the NRS-Code as prima facie.

36. It is also in the public interest to ensure that those elected to serve in the highest state and local offices uphold the law. "If the government becomes a lawbreaker, it breeds contempt for the law; it invites every man to become a law unto himself." Olmstead v. United States, 277 US 438 ~~(1928)~~, at 485 (1928).

37. Finally, "it is always in the public interest to prevent the violation of a party's constitutional rights" Sammartano v. First Judicial District Court, 303 F.3d 959, at 974 (9th Cir. 2002)

## POINT 2

## The Defendants Should Be Enjoined From Enforcing Both Section 9 of SB2 And Section 9 of 1957 Stat. Nev. Ch. 2 (The Act As Published And Enrolled)

38. Plaintiff hereby incorporates by reference my Complaint (Document 1-1), and all paragraphs therein, as if fully set forth herein.

### A. Plaintiff Is Likely To Succeed On The Merits

39. I have asserted facial challenges to the constitutionality of the Act, both as published and as enrolled. In addition, I have specifically asserted facial challenges to Section 9 of the Act, both as published and as enrolled. See Complaint, Paragraphs 332-364.

40. For the reasons discussed in Point 3, infra, this Motion

limits its scope to only seeking to enjoin Section 9 of the Act at this time. However I do NOT waive any claim raised in my Complaint, nor does this Motion serve to limit the scope of the sought after relief therein.

1. The Attested Enrolled Senate Bill No. 2 (1957) Shows No Terms Or Provisions Within, Or Following, Section 9 Of The Act.

41. I have asserted, both in my verified Complaint and sworn Declaration, that there are no terms, provisions, or possible penalties for the statute laws 1.010 to 710.590, inclusive, enumerated within, or following, Section 9 of SB2.

42. In its decision in Field v. Clark, 143 US 649 (1892), the United States Supreme Court created what has become known as the "Enrolled Bill Rule". This Rule is mandatory, and holds in part:

> "Whenever a general statute is misrecited, or its existence denied, the question is to be tried and determined by the court as a question of law, that is to say, the court is bound to take notice of it, and inform itself the best way it can; that there is no plea by which its existence can be put in issue and tried as a question of fact; that if the enrollment of the statute is in existence, the enrollment itself is the record, which is conclusive as to what the statute is." Field v. Clark, Id. at 675 (emphasis added).

43. The enrollment, the attested enrolled Senate Bill No. 2 (1957), has been submitted to this Court as "Exhibit A - Submitted Pursuant To Local Rule 10-3(c)". See Declaration, Paragraph 8. It shows conclusively that there are no terms, provisions, or possible penalties for the statute laws 1.010 to 710.590, inclusive, enumerated within, or following

Section 9 of SB2.

44. The United States Supreme Court has applied the Enrolled Bill Rule to enactments of state legislatures as well. See Harwood v Wentworth, 162 US 547, at 562 (1896), where an attested enrolled bill of the Arizona Legislature was held "to have been enacted in the mode required by law, and to be unimpeachable", despite claims that certain clauses were mistakenly omitted.

45. The rulings of the Nevada Supreme Court are on all fours with these rulings. See State v. Swift, 10 Nev 176, at 182-183 (1875); State v. Glenn, 18 Nev 34, at 38 (1883); Osburn v. Beck, 25 Nev 68, at 80-81 (1899). These rulings would seem to create a property interest.

46. A simple inspection of the submitted attested enrolled Senate Bill No. 2 (1957) proves my assertion to be true.

2. Section 9 Of 1957 Statutes Of Nevada, Chapter 2, Violates Substantive Component Of Due Process

47. The statute laws 1.010 to 710.590, inclusive, which are "contained" within Section 9 of 1957 Stat. Nev. Ch. 2, each individually violate the substantive component of due process by arbitrarily depriving myself, and all other citizens of Nevada, the fundamental liberty interest created by Article 4 §23 of the Nevada Constitution which mandates that every law contain an enacting clause. (It should be noted that this section is offerred in addition, and alternatively, to the preceeding section's argument concerning the Enrolled Bill Rule).

48. Pursuant to the provisions of Section 8 of the Act, the statute laws 1.010 to 710.590, inclusive, were NOT published in the Statutes of Nevada (Session Laws), therefore they were not published with an enacting clause on their respective faces.

a. The History And Tradition Of The Liberty Interest

49. The Nevada Supreme Court described the provision of Article 4§23 as "an imperative mandate of the people in their sovereign capacity to the legislature, requiring that all laws to be binding upon them shall, upon their face, express the authority by which they were enacted." Chase v. Rogers, 10 Nev 250, at 261 (1875).

50. Nearly, if not, all states require all laws enacted to contain some form of an enacting clause on their face to show the authority by which they were enacted. For the states who are not required to do so by their respective constitution, it is usually done so by custom or statute.

51. The United States Constitution does not require Congress to include an enacting clause on the face of the laws it enacts, however each Act of Congress contains an enacting clause. Explicit as the terms and provisions it introduces, each an essence and substance of the law.

52. "The Due Process Clause specially protects those fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition,'... and 'implicit in the concept of ordered liberty.'" Sacramento v. Lewis, 523 US 833, at 860 (1998) (Justice Scalia, concurring, quoting Washington v. Glucksberg, 521 US 702 (1997)) An enacting clause on the face of the laws that are binding upon the citizenry would have to be considered a fundamental liberty interest.

b. Section 8 Does Not Excuse The Arbitrary Action

53. Section 9 cannot "point the finger" at Section 8 to justify the arbitrary deprivation of the liberty interest created by Article 4§23. Nor can "legislative intent" override constitutional mandates,

or remedy the constitutional deprivation. See Marbury v. Madison, 5 US 137, at 180 (1803) "A law repugnant to the constitution is void."

54. Additionally Section 8 itself violates the substantive component of due process by contravening the mandate of Article 15 §8 of the Nevada Constitution that all statute laws be published. That particular asserted fundamental liberty interest, 'the publication of the laws,' goes much further back than the Act of September 15th, 1789, vol. 1, pg. 41, ch. 14. The written law is a principle that precedes the American colonies, and ~~likely~~ England's Parliament as well. Specifically, publishing the laws as a matter of public policy.

3. Section 9 Of The Act Is "Void-For-Vagueness"

55. This section is offerred in addition, and alternatively, to the arguments set forth in the preceding sections which addressed the Enrolled Bill Rule and the liberty interest created by Article 4 §23.

56. As set forth in my Complaint, and supported on the face of the Act as published and enrolled, Section 9 of the Act does not list any terms, provisions, possible penalties, or enforcement guidelines. for the statute laws 1.010 to 710.590, inclusive, which are purportedly contained therein. Neither does the Act define the scope of "1.010 to 710.590, inclusive". See Complaint, Paragraphs 344-351, 360-362.

a. The Language of Section 9, And The Statute Laws 1.010 to 910.590, Inclusive, Contained Therein

57. "Statutes should be interpreted to give effect, if possible, to every clause and word. See Duncan v. Walker, 533 US 167, at 174 (2001)." Equal weight should be given to the complete lack of terms, ~~which~~ that "comprise" the statute laws 1.010 to 710.590, inclusive, found within Section 9 of the Act.

58. The Act only describes the statute laws within Section 9 as "1.010 to 710.590, inclusive" (And/Or "NRS 1.010 to 710.590, inclusive"). It does not separate or individualize these laws, they are described within the Act collectively. The deficiencies and constitutional violations attributed to Section 9, and/or the statute laws 1.010 to 710.590, inclusive, contained therein, are asserted against each of them individually as well as collectively. For the purpose of clarity, a reference to Section 9 of the Act also encompasses the statute laws 1.010 to 710.590, inclusive, contained therein.

59. Section 9 of the Act gives the citizenry no clear guidance on how to comply with its provisions or what penalties will result from non-compliance. Its "standardless" guidance and enforcement provisions are also likely to result in arbitrary and discriminatory enforcement. "It is established that a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits..." Giaccio v. Pennsylvania, 382 US 399, at 402-403 (1966).

60. Section 9 of the Act is vague "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." Coates v. Cincinnati, 402 US 611, at 614 (1971).

61. As the Act fails to identify which statute laws within Section 9 are penal statutes, the "Void-For-Vagueness" Doctrine must be applied to Section 9 and its contents as a whole.

b. The Scope "1.010 to 710.590, Inclusive"

62. In addition to its non-existent terms, Section 9 also

causes substantial uncertainty with its broad and undefined scope, which is only described within the Act as "1.010 to 710.590, inclusive."

63. This fails to provide fair notice in relation to the true extent of the scope reached by the description. It also fails to establish standards for government officers and the public to guard against the arbitrary deprivation of liberty interests. In fact, it promotes and encourages subjective interpretation by law-enforcement, furnishing a convenient tool for arbitrary and discriminatory enforcement. See Kolender v Lawson, 461 US 352, at 358 (1983); see also Grayned v. City of Rockford, 408 US 104, at 108 (1972); see also Papachristou v. City of Jacksonville, 405 US 156, at 170 (1972).

64. The vague parameters of "1.010 to 710.590, inclusive" acts somewhat as a net large enough to "catch all", forcing the citizenry to guess what falls in between. See United States v. Reese, 92 US 214, at 221 (1876).

B. Plaintiff Is Likely To Suffer Irreparable Harm

65. Section 9 of the Act is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." Cf. Watson v. Buck, 313 US 387, at 402 (1941).

66. It is the absolute void of any clauses, sentences or paragraphs within Section 9 of the Act which make it unconstitutional "in whatever manner and against whomever an effort might be made to apply it."

67. Irreparable harm is inflicted by the mere existence and threatened enforcement of Section 9 of the Act. ~~See Watson v. Buck, Id.~~;

~~See also~~ Cf. Village of Euclid v. Amber Realty Co., 272 US 365, at 384 (1926).

68. Also, the deprivation of constitutional rights unquestionably constitutes irreparable injury. See Melendres v. Arpaio, 695 F.3d 990, at 1002 (9th Cir. 2012); Washington v. Trump, 847 F.3d 1151, at 1169 (9th Cir. 2017).

69. A plaintiff can suffer constitutional injury by being forced to comply with an unconstitutional law or else face enforcement action. In the instant case, I have to comply with whatever terms and provisions the Defendants assert comprise the statute laws 1.010 to 710.590, inclusive, found within Section 9 of the Act. The alternative is to suffer the penalties of the law, which is also determined arbitrarily by the Defendants. See e.g. American Trucking Associations Inc v. City of Los Angeles, 559 F.3d 1046, at 1058-1059 (9th 2009); Morales v. TWA, Inc, 504 US 374, at 380-381 (1992).

70. Point 1, supra, describes the manner in which the Defendants, and/or their subordinates, have used the vagueness of Section 9 to assert that certain "statute laws", and the terms and provisions thereof, are "covered" by "1.010 to 710.590, inclusive". The Defendants', and/or their subordinates', past conduct makes it likely that the practices will continue if left unchecked.

71. The Due Process Clause was "intended to secure the individual from the arbitrary exercise of the powers of Government." Hurtado v. California, 110 US 516, at 527 (1884). The only way Section 9 can be executed or enforced is arbitrarily.

72. In the words of Justice Jackson:

> "The Framers of the Constitution knew, and we should not forget today, that there is no more effective practical guaranty against arbitrary and

unreasonable government than to require that the principles of law which officials would impose upon a minority be imposed generally.

"Conversely, nothing opens the door to arbitrary action so effectively as to allow those officials to pick and choose only a few to whom they will apply legislation and thus to escape the political retribution that might be visited upon them if larger numbers were affected." Railway Express Agency Inc v. New York, 336 US 106, at 112-113 (1949) (concurring opinion).

73. Section 9 of the Act is far more likely to be used against individuals who are impoverished or considered in general as "undesirable". There is a much lesser chance of it being pleaded/enforced against an affluent or prominent member of society, simply because their voice or cries of "Foul" would be heard and given credence.

C. Balance Of Equities

74. The Defendants cannot be harmed by being prevented from enforcing Section 9 of the Act, or the statute laws "1.010 to 710.590, inclusive" contained therein, as it lists no terms, provisions, scope, possible penalties, or guidelines for the enforcement and imposition thereof.

75. The injunction will only apply to Section 9 of the Act and its provisions. As discussed, infra, in Point 3, it will not affect any subsequent Act of the Legislature, nor any terms or provisions of any law in the Statutes of Nevada or

the presumed validity thereof. So the Defendants will not be prevented from enforcing any laws.

76. The sought injunction would only have the effect of preventing the Defendants from using Section 9 and its vague scope/provisions as a "license to legislate" or "blank check" for arbitrary action.

D. Public Interest

77. "It is a fair summary of history to say that the safeguards of liberty have frequently been forged in controversies involving not very nice people." United States v. Rabinowitz, 339 US 56, at 69 (1950) (Justice Frankfurter, dissenting).

78. The potential for the arbitrary use of Section 9 and its provisions goes far beyond the Plaintiff ~~and~~ and penal statutes; its threat ranges literally from "1.010 to 710.590, inclusive", so any subject contained therein is possibly susceptible. So whilst Plaintiff has not moved for ~~classificat~~ class certification yet pursuant to FRCP 23, the claims raised in my Complaint, as well as the sought injunction, affect every person who visits, resides, or does business in the State of Nevada. Every member of the public benefits from arbitrary action being prevented from occurring.

79. It is always in the public interest to be free from the enforcement of laws which can they can neither look to the Statutes of Nevada or the enrolled bill to ascertain their terms and provisions. As Justice Beatty stated over 145 years ago, and still relevant today:

> "The determination of this particular case may affect very slightly the public revenues or the public morality, but it is a matter of very great moment to every citizen of the State, that on first presentation of the question here, this court should

lay down a correct and safe rule by which he may determine what that law is which is to bind him in all his transactions, giving its construction to his agreements, limiting the measure of his rights, and his mode of redress where his rights are invaded...

"Considering the exigency of this rule it is easy to perceive of what extreme importance it is that there should be some high, authentic and unquestionable record to which not only courts and public officers, but private citizens, may resort, and by a simple inspection determine for themselves with infallible certainty, what are the statutes of the State, and what are their terms..." State v. Swift, 10 Nev 176, at 182-183 (1875).

80. Its, of course, always in the public interest to enjoin enforcement of a law whose very existence violates the rights guaranteed by the Constitution. All citizens have a stake in ensuring the Constitution is upheld. See Preminger v. Principi, 422 F.3d 815, at 826 (9th Cir. 2005).

## POINT 3

## The Sought Injunction Will Not Affect Any Provision Or Law In The Statutes Of Nevada!

81. By this Motion Plaintiff only seeks to prevent the ability of the Defendants to improperly use/enforce Section 9 of the Act, thereby leveling the playing field.

82. While the statute laws "1.010 to 710.590, inclusive" are implicated, it is ONLY "1.010 to 710.590, inclusive" as contained

within Section 9 of the Act. This Motion does NOT seek to enjoin any statute laws found in the Statutes of Nevada which are posterior to 1957 Statutes of Nevada, Chapter 2, regardless of their designation.

83. For example, the statute law 202.480, which is found in 2009 Statutes of Nevada, Chapter 110, would NOT be enjoined. Likewise, 41.130, as found in 1997 Statutes of Nevada, Chapter 384 § 3, would NOT be enjoined.

84. To be clear, neither my Complaint or this Motion, attack any law found in the Statutes of Nevada which is post-Senate Bill No. 2(1957)/1957 Statutes of Nevada, Chapter 2. However, I do NOT concede their validity, nor do I waive any right to challenge them in the future.

85. This injunction would alter no terms to any laws, nor would it preclude the Defendants from enforcing any valid laws. It also does not prevent the Defendants from using the NRS-Code, although it does erase their ability to plead Section 9 of SB2 in bad faith. But as indicated herein, supra, there is no statute in the NRS-Code which purports to be prima facie or codify Section 9 of the Act, so no LEGAL course of action is being denied to the Defendants.

86. The sought injunction would only apply to the actual text of Section 9 of the Act, as published and enrolled. It cannot be said that this narrowly defined scope would harm, hinder, or restrict the Defendants from carrying out or enforcing any laws in any legal manner. In fact it does nothing except prevent any unscrupulous actors from using Section 9 of the Act's vagueness, knowingly and purposely, arbitrarily against the citizenry. "The touchstone of due process is the protection of the individual against arbitrary action of the government." Dent v. West Virginia, 129 US 114, at 123 (1889).

## POINT 4

## Plaintiff Should Not Be Required To Post Security

87. Under FRCP 65(c) a party seeking a preliminary injunction is required to give security in an amount that would cover the loss of the enjoined party if its found to have been done in error.

88. This Court has discretion to waive the bond requirement, and should do so, as the Defendants would not occur any costs or monetary damages from the issuance of the injunction. See University Books & Videos, Inc. v. Metro-Dade County, 33 F. Supp. 2d 1364, at 1374 (S.D. Fla. 1999).

89. Further, Plaintiff is indigent and unable to post security. See Application To Proceed In Forma Pauperis (Document 1).

## CONCLUSION

For the foregoing reasons, this Court should grant the motion in its entirety.

Dated this 13th day of July, 2020.

Respectfully Submitted,

[signature]

Julius Bradford

Certificate of Service

I hereby certify that on or about the 16th day of July, 2020, pursuant to FRCP 5(b), I caused to have mailed a true and correct copy of the foregoing "Memorandum Of Law In Support Of Plaintiff's Motion For Entry Of Preliminary Injunction" to the following:

Aaron D. Ford
NV Attorney General Office
100 N. Carson St.
Carson City, NV 89701

Steve Sisolak
State Capitol Building
101 N. Carson St.
Carson City, NV 89701

Board Of Commissioners
Clark County Govt. Center
500 S. Grand Central Pkwy
Las Vegas, NV 89155

Steven B. Wolfson
Clark Co. Dist. Atty.
200 Lewis Ave.
Las Vegas, NV 89155

[signature]
Julius Bradford

Julius [illegible]
HDSP; [illegible]
Indian Springs, NV 89070




Las Vegas P&DC 89199
THU 16 JUL 2020 PM

FILED
ENTERED
RECEIVED
SERVED
COUNSEL/PARTIES OF RECORD
JUL 2[illegible] 2020
CLERK US DISTRICT COURT
DISTRICT [illegible]
BY:

Clerk of the Court
United States District Court
Lloyd D. George; U.S. Courthouse
333 Las Vegas Blvd. South; RM#1334
Las Vegas, NV 89101

LEGAL MAIL