1
2
3
4             **UNITED STATES DISTRICT COURT**
5                    **DISTRICT OF NEVADA**
6                            * * *
7   Julius Bradford,                        Case No. 2:20-cv-00871-APG-BNW
8                        Plaintiff,
                                            **ORDER**
9        v.
10  Steve Sisolak, et al.,
11                       Defendants.
12

13         Pro se plaintiff Julius Bradford brings a complaint under 42 U.S.C. § 1983 against several

14  government officials. ECF No. 15.  Bradford does not proceed in forma pauperis ("IFP"). ECF

15  No. 7.  But the Court must screen his complaint because he is an incarcerated litigant who seeks

16  redress from a government officer, employee, or entity. *See* 28 U.S.C. § 1915A(a).

17         Bradford's complaint primarily takes aim at several provisions in the Nevada Revised

18  Statutes that he claims are void because they codify a law not found in the Statutes of Nevada,

19  were enacted without an enacting clause on their face, or were otherwise ratified in a manner

20  inconsistent with Nevada law.  Bradford claims that the infirmities in these challenged provisions

21  violate his rights under the First, Fifth, and Fourteenth Amendments of the United States

22  Constitution.  However, the Court finds that Bradford lacks standing to bring his claims

23  because—even accepting his well-pled allegations as true and construing them in the light most

24  favorable to Bradford—he has not sufficiently alleged an injury.  Bradford will be granted leave

25  to amend by June 16, 2021.

26         Also before the Court are several motions pertaining to service. ECF Nos. 13, 16, 26, 27,

27  and 28.  These motions will be denied because upon entry of this order Bradford's complaint will

28

be dismissed.  Finally, Bradford moves to supplement his amended complaint, ECF No. 20, but this motion will be denied because a complaint must be complete in and of itself.

## I.  Screening order

### A.  Screening standard

The Court must screen every complaint asserted by an incarcerated litigant who "seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).  This mandate applies to all incarcerated litigants, "no matter their fee status." *Ketchens v. Corcoran*, 2021 WL 75675, at *1 (S.D. Cal. Jan. 8, 2021).

When the Court screens a complaint under § 1915A, it must identify cognizable claims or dismiss any portion of the complaint that (1) "is frivolous, malicious, or fails to state a claim upon which relief may granted"; or (2) "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).  In other words, to survive § 1915A review, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court liberally construes pro se complaints and may only dismiss them "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

In considering whether the complaint is sufficient to state a claim, all allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys. Inc.*, 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted). Although the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id.* Unless it is clear the complaint's deficiencies could not be cured through amendment, a pro se plaintiff should be given leave to amend the complaint with notice regarding the complaint's deficiencies. *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

**B. Standing**

The jurisdiction of a federal court is limited to actual cases and controversies. U.S. CONST. art. III, § 2, cl. 1. "That limitation is given effect by requiring a litigant to establish standing before invoking the court's authority." *Watkins v. Peterson Enters., Inc.*, 57 F. Supp. 2d 1102, 1111 (E.D. Wash. 1999). When a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

To establish standing, a plaintiff must show that it has suffered a cognizable injury-in-fact. *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1093 (9th Cir. 2003). An injury-in-fact "must be 'concrete and particularized' and 'actual and imminent,' as opposed to 'conjectural' or 'hypothetical.'" *Marijuana Pol'y Project v. Miller*, 578 F. Supp. 2d 1290, 1299 (D. Nev. 2008).

**C. Screening the Complaint**

**1. Allegations**

Bradford asserts ten causes of action against a slew of Nevada state and local government officials, including the governor, Attorney General, Clark County District Attorney, members of the Clark County Board of Commissioners, and current and former employees of the Legislative Counsel Bureau. ECF No. 15 at 1. Bradford claims that in 1951 the Nevada legislature created the Statute Revision Commission. *Id.* at 9. The Commission comprised three Nevada Supreme Court justices, and its task was to compile, codify, and annotate all of Nevada's existing general laws. *Id.* This codified version of the laws became known as the Nevada Revised Statutes ("NRS"). *Id.* The NRS were "intended to serve as prima facie evidence of the actual laws," though they can be rebutted by showing proof that the actual Nevada law differs from the NRS in some meaningful way. *Id.*

Bradford alleges that the Commission erred when it created the NRS. According to Bradford, the Commission mistakenly compiled the NRS "from previous codified versions, rather than from actual acts of the Nevada legislature." *Id.* at 10. This error supposedly rendered the NRS null because the Nevada legislature did not authorize the NRS "to be prima facie of compilations which themselves were prima facie evidence." *Id.* Nevada's officials allegedly

1    recognized this error and, in an effort to "save" the NRS, the legislature in 1957 ratified Senate

2    Bill No. 2 ("SB2"). *Id.*

3          SB2 purported to repeal all of the previous laws "and replace them with 'new' laws

4    enacted 'within' the act." *Id.*  SB2 comprises 9 sections. ECF No. 15-1 at 6–9.  Section 3 repealed

5    every Nevada law "of a general, public, and permanent nature enacted prior to January 21, 1957."

6    *Id.*  This provision, according to Bradford, nullified the pre-1957 NRS and all other preceding

7    compilations" *Id.* at 12.  Section 1 provides that Nevada law shall comprise the statute laws that

8    follow section 9. ECF No. 15-1 at 6–9.  Section 8 provides that "[t]he provisions of NRS 1.010 to

9    710.590, inclusive, appearing following section 9 of this act shall not be printed or included in the

10   Statutes of Nevada . . .; but there shall be inserted immediately following section 9 of this act the

11   words: 'Here followed NRS 1.010 to 710.590, inclusive.')." *Id.*  To that end, section 9 provides

12   that "[t]he following laws and statutes attached hereto, consisting of NRS section 1.010 to

13   710.590, inclusive, constitute the Nevada Revised Statutes: (Here followed NRS 1.010 to

14   710.590, inclusive.)." ECF No. 15-1 at 9.

15        **2.  Causes of action**

16             **i.  Claim 1**

17          Bradford alleges that SB2 § 9 is facially unconstitutional because it infringes on his right

18   of free speech and is void for vagueness. *Id.* at 27.  Specifically, in this count Bradford takes issue

19   with the language in § 9 that provides "Here followed NRS 1.010 to 710.590, inclusive." *Id.*  He

20   claims that at least some of the laws in the spectrum between NRS 1.010 to 710.590 contain

21   penalties, but that there is no way for him to discern from § 9 what conduct is proscribed and

22   what the penalties are for engaging in proscribed conduct. *Id.*  Bradford also complains that § 9

23   does not indicate what specific statutes are included within the "NRS 1.010 to 710.590" language.

24   In other words, he complains that "[t]he only certainty is that two statute laws, '1.010 and

25   710.590,'" are included within the language of § 9.

26             a)  First Amendment challenge

27          Beginning with the First Amendment challenge, the mere existence of a proscriptive

28   statute does not satisfy the "case or controversy" requirement. *Thomas v. Anchorage Equal Rights*

*Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000). Generally, a plaintiff lacks standing unless there exists a genuine threat of imminent prosecution. *Humanitarian Law Project v. U.S. Dept. of Treasury*, 463 F. Supp. 2d 1049, 1068 (C.D. Cal. 2006) (citing *Thomas*, 220 F.3d at 1139).

In the First Amendment context, the Supreme Court has dispensed with rigid standing requirements and "the inquiry tilts dramatically toward a finding of standing." *Humanitarian Law Project*, 463 F. Supp. 2d at 1068; *Libertarian Party of Los Angeles Cnty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013). The logic behind this rule is that "a chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury." *Bowen*, 709 F.3d at 870. Therefore, if a plaintiff "has refrained from engaging in expressive activity for fear of prosecution under the challenged statute, such self-censorship is a constitutionally sufficient injury as long as it is based on an actual and well-founded fear that the challenged statute will be enforced." *Id.* (citing *Human Life of Wash. Inc. v. Brumsickle*, 624 F.3d 990, 1000 (9th Cir. 2010)).

To determine the genuineness of a claimed threat of prosecution, courts consider three factors: (1) whether the plaintiff has articulated a concrete plan to violate the law in question; (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings; and (3) the history of past prosecution or enforcement under the challenged statute. *Id.* at 870.

In *Thomas*, the plaintiffs were two religious landlords who believed that cohabitation between two unmarried persons—and a landlord's facilitation of this living arrangement—was a sin. *Thomas*, 220 F.3d at 1137. The landlords challenged a law which made it unlawful to refuse to sell, lease, or rent property because of a person's marital status, and to publish or advertise a preference based on marital status. *Id.* The landlords sued under the free exercise and free speech clauses in the First Amendment because they had refused to rent to unmarried couples in the past and intended to continue to do so in the future. *Id.*

The Ninth Circuit held that the plaintiff-landlords lacked standing. *Id.* at 1139. Beginning with the first factor, the court acknowledged the landlords' representations that they refused to rent to unmarried couples in the past, but the court noted that they "[could not] say when, to whom, where, or under what circumstances." *Id.* The court further acknowledged the landlords'

1   representations that they intended to violate the law in the future by refusing to rent to unwed

2   couples, but the court again noted that the landlords "[could not] specify when, to whom, where,

3   or under what circumstances." *Id.*

4          For the second factor, the court found that the record lacked any indication of a threat of

5   enforcement, "generalized or specific," directed at plaintiffs. *Id.* at 1140. The standing doctrine

6   does not "always" require plaintiffs to await arrest or prosecution before they can challenge a

7   statute, but the threat "must at least be 'credible,' not simply 'imaginary or speculative.'" *Id.* The

8   landlords did not identify any tenants they turned away due to marital status and no prospective

9   tenant had ever complained to authorities about the landlords. *Id.*

10         Finally, the court found that the third factor was neutral. *Id.* The Court noted that there

11  had been three cases of civil enforcement, but not a single criminal prosecution was effected

12  under the challenged laws. *Id.* Further, the three civil cases were initiated with a complaint, but

13  the landlords offered no complaint that had been filed against them. *Id.* After assessing all three

14  factors, the court held that the threat of enforcement or prosecution was not reasonable or

15  imminent despite being "theoretically possible." *Id.* at 1141.

16         Here, Bradford's first claim fails because he has not sufficiently alleged a threat of

17  prosecution, and, by extension, an injury-in-fact. Beginning with the first factor, Bradford has not

18  alleged a concrete plan to violate any of the number of laws within the spectrum of NRS 1.010 to

19  710.590, inclusive. The *Thomas* landlords pledged their intent to violate the challenged laws in

20  the future, but Bradford does not do even that. Without a concrete plan to violate the statutes in

21  question, this factor weighs against standing because, like the *Thomas* landlords, Bradford has not

22  specified "when, to whom, where, or under what circumstances."

23         The second and third factors likewise cut against standing. In this claim, Bradford does

24  not point to any instances where authorities—civil or criminal—have communicated a specific

25  warning or threat to prosecute him under NRS 1.010 to 710.590. Nor does Bradford allege a

26  history of past prosecution or enforcement.

27         With these three factors in mind, the Court believes that Bradford does not have standing

28  to assert this claim. At bottom, Bradford appears to challenge the mere existence of these laws

1    because they might contain proscriptive mandates.  But, again, "the mere existence of a

2    proscriptive statute" does not satisfy the case-or-controversy requirement. *Thomas*, 220 F.3d at

3    1139.

4                        b)   Vagueness challenge

5         Bradford's vagueness challenge fails, too.  Even in the vagueness context, a plaintiff "must

6    establish constitutional standing with regard to the provisions challenged." *Hunt v. Cty. of Los*

7    *Angeles*, 638 F.3d 703, 709 (9th Cir. 2011).  Pre-enforcement vagueness plaintiffs must

8    demonstrate "an intention to engage in a course of conduct arguably affected with a constitutional

9    interest, but proscribed by a statute, and . . . a credible threat of prosecution thereunder." *Carrico*

10   *v. Cty. and Cnty. of San Francisco*, 656 F.3d 1002, 1005, 1006 (9th Cir. 2011).  When plaintiffs

11   do not claim "'that they have ever been threatened with prosecution, that a prosecution is likely, or

12   even that a prosecution is remotely possible,' they do not allege a dispute susceptible to resolution

13   by a federal court." *Id.*

14        Here, Bradford alleges that § 9—which purports to give effect to NRS 1.010 to 710.590—

15   is void for vagueness.  However, and for the same reasons announced above, he has no standing

16   because he does not allege that any of these laws have been enforced against him, he does not

17   allege an intent to engage in a course of conduct proscribed by a statute, and he does not allege a

18   credible threat of enforcement.  This claim is therefore dismissed with leave to amend.

19        **ii.    Claim 2**

20        In his second claim, Bradford asserts that there exists a substantive due process right to

21   have a legislative body publish "all statute laws . . . in the sessions laws, with an enacting clause

22   on the face of the law to show not only the terms/provisions of the law, but also the authority by

23   which it governs." ECF No. 15 at 31.  He alleges that SB2 § 8 violates this right because it

24   directed that the laws "1.010 to 710.590, inclusive" not be published in the sessions laws. *Id.*

25   According to Bradford, § 8 likewise precluded NRS 1.010 to 710.590 from being published with

26   an enacting clause on each of their respective faces. *Id.* 31–32.  Bradford further claims that SB2

27   violates his right to procedural due process because although it purported to enact NRS 1.010 to

28   710.590, it did so in a manner not authorized by the Nevada constitution. *Id.* at 32.

1    Bradford lacks standing to bring these claims, too.  Beginning with Bradford's substantive

2    due process claim, Bradford does not allege that any of these laws are being enforced against him,

3    and he does not claim an intent to violate NRS "1.010 to 710.590, inclusive."  Thus, even

4    assuming that there does exist a substantive due process right to have "all state laws" published

5    "in the session laws with an enacting clause on their face," Bradford has not alleged a cognizable

6    injury because he did not allege that any of these supposedly unconstitutional laws have been, are

7    being, or will be enforced against him.  Instead, he alleges the mere existence of a potentially

8    unconstitutional statute, which "does not necessarily create a 'case or controversy' under [] Article

9    III." *Marijuana Pol'y Proj. v. Miller*, 578 F. Supp. 2d 1290, 1301 (D. Nev. 2008).

10    Further, Bradford's complaint strikes too broadly.  He claims that SB2 violates his alleged

11    fundamental right because NRS "1.010 to 710.590, inclusive" were ratified without an enacting

12    clause "on each of their respective faces." ECF No. 51 at 32.  But this range of laws encompasses

13    hundreds and hundreds of provisions, many of which have been amended since SB2.  For

14    example, NRS 1.010 was amended in 2013, and NRS 1.020 was amended in 1979, 1987, 1991,

15    and 2013.  The bill amending these laws appears to have an enacting clause on its face. S.B. 463,

16    2013 Nev. Leg., 77th Sess. (Nev. 2013).  Thus, Bradford's challenge to many of these laws

17    appears to be moot because the asserted defects no longer exist.[1]

18    Finally, turning to Bradford's procedural due process claim: "Procedural due process

19    claims have two elements: (1) a deprivation of a protected liberty or property interest, and (2) a

20    denial of adequate procedural protections." *Blocktree Props., LLC v. Publ. Utility Dist. No. 2 of

21    Grant Cnty. Wash.*, 447 F. Supp. 3d 1030, 1038–39 (E.D. Wash. 2020).  Property interests "are

22    created by a source independent of the Constitution, like state law," and they "include anything to

23    which a plaintiff has a 'legitimate claim of entitlement.'" *Id.* at 1039.

24

25

26    _____

27    [1] In deciding the sufficiency of a plaintiff's allegations in the complaint, the Court may consider
matters of judicial notice, including legislative bills. *Gerritsen v. Warner Bros. Entertainment Inc.*, 112 F.
Supp. 3d 1011, 1020 (C.D. Cal. 2015); *Concepcion v. Ygrene, Inc.*, 2020 WL 1493617, at *3 (S.D. Cal.

28    Mar. 27, 2020).

1       Here, the Court finds that plaintiff has failed to articulate a plausible procedural due

2   process claim.  Beginning with the first element, it is unclear to the Court what Bradford's

3   "property interest" is.  Construed broadly, Bradford may be alleging that he has a property interest

4   in having "[t]he statute laws '1.010 to 710.590, inclusive' . . . enacted in the manner prescribed by

5   the laws and constitution of the State of Nevada." ECF No. 15 at 32.  But even if this were true,

6   Bradford has not alleged sufficient factual matter for the second element of this claim.  Bradford

7   does not claim that he invoked certain procedural protections to enforce this property interest, and

8   that these protections were inadequate.  Nor does Bradford allege the nonexistence of procedural

9   protections to safeguard this supposed property interest.  Instead, Bradford merely claims a

10  property interest in having laws passed in accordance with Nevada law, he alleges that this

11  property interest was invaded, and he explains how he believes this is so, but his allegations in

12  this count go no further than that.  Even accepting these allegations as true, Bradford has not

13  alleged "a denial of adequate procedural protections" to safeguard this supposed property interest.

14  Without this necessary element, Bradford's procedural due process claim fails and it will be

15  dismissed with leave to amend.

16          **iii.    Claim 3**

17      In his third cause of action, Bradford alleges that NRS 220.170(3) is overbroad on its face.

18  ECF No. 51 at 34.  Bradford alleges that "the NRS-code impermissibly codified laws not included

19  in the Statutes of Nevada, which denies the right to challenge these sections/statutes as prima

20  facie in the manner prescribed by NRS 220.170(3)." *Id.*  The challenged provision, in turn,

21  provides that the NRS constitutes "the official codified version of the Statutes of Nevada" and

22  may be cited as prima facie evidence of Nevada law. NRS 220.170(3).  It further provides that

23  this evidence may be rebutted by proof that the statutes cited differ from the official Statutes of

24  Nevada, except that the evidence "may not be rebutted by proof that the statutes differ from the

25  official statutes of Nevada in a manner authorized pursuant to NRS 220.120." NRS 220.170(3).

26      In an overbreadth challenge, a statute may be facially unconstitutional if "it seeks to

27  prohibit such a broad range of protected conduct that it is unconstitutionally overbroad."

28

1  *Burbridge v. Sampson*, 74 F. Supp. 2d 940, 944 (C.D. Cal. 1999). But even in an overbreadth

2  challenge, the plaintiff must himself satisfy the injury-in-fact requirement. *See id.*

3      Bradford lacks standing to bring this claim because he does not allege an injury in fact.

4  Bradford has not alleged in this count that he attempted to invoke NRS 220.170(3). Bradford,

5  further, has not articulated a concrete plan to violate any provision of the NRS, he has not alleged

6  whether prosecuting authorities have communicated a specific warning or threat to initiate

7  proceedings under any provision of the NRS, and he does not point the Court to any history of

8  past prosecution or enforcement under any statute he desires to challenge. Thus, even under the

9  relaxed First Amendment standing context, Bradford has not alleged a credible threat of

10  enforcement, and he therefore lacks standing to bring his overbreadth claim. Accordingly,

11  Bradford's claim will be dismissed with leave to amend.

12      **iv.    Claim 4**

13      In this claim, Bradford alleges that NRS 220.170(3) violates the Equal Protection Clause.

14  He argues that the NRS contains two categories of statutes: (1) those that codify laws found "in

15  the Statutes of Nevada" and (2) those that codify laws which have been repealed or are not found

16  in the Statutes of Nevada. ECF No. 51 at 35. Bradford alleges that persons lodging a challenge to

17  the first category of statutes will be given full consideration of their challenge on the merits, but

18  persons lodging a challenge to the second category are not. *Id.* Moreover, Bradford claims that he

19  intends to challenge NRS 195.020 but he does not believe he "will be afforded the opportunity to

20  utilize the rebuttal procedure provided by NRS 220.170(3)." *Id.*

21      Again, an Article III injury must be "concrete, particularized, and actual or imminent;

22  fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v.

23  Amnesty Inter. USA*, 568 U.S. 398, 409 (2013). Imminence is "a somewhat elastic concept," but

24  "it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too

25  speculative for Article III purposes." *Id.* Thus, the Supreme Court requires that a threatened

26  injury "be *certainly impending* to constitute an injury in fact." *Id.* (emphasis in original).

27  Allegations of possible future injury "are not sufficient." *Id.*

28

In *Clapper*, a group of lawyers challenged the constitutionality of a section of the Foreign Intelligence Surveillance Act ("FISA"), which authorizes surveillance of individuals who are not United States persons and are believed to be located outside of the United States. *Id.* at 1142. The plaintiffs asserted that their work required them to engage in sensitive communication with individuals they suspected were targets of FISA surveillance. *Id.* They claimed that their injury arose from the increased risk that their communications could be monitored in the future. *Id.*

The Supreme Court held that plaintiffs lacked standing. *Id.* at 1148. The Court explained that plaintiffs' arguments were based on the "highly speculative fear" that the government would target the non-U.S. persons with whom they communicate; that the government would choose to invoke its authority under FISA rather than some other method of surveillance; that the government would succeed in intercepting the communications; and that plaintiffs would be part of the particular communications intercepted by the government. *Id.* This constituted a "highly attenuated chain of possibilities," which did not satisfy the requirement that injury must be certainly impending. *Id.* Thus, the Court declined to abandon its "usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors." *Id.*

Here, Bradford has not alleged an Article III injury for this claim. He does not claim that he has been treated differently from others. Instead, Bradford claims that he "intends" to challenge NRS 195.020—which defines the term "principals" under Nevada's criminal statutes—and that he "believes" he will not be treated similarly. However, these claims are far too speculative to show injury. Instead, it appears that Bradford has merely alleged that he might be harmed sometime in the future.

Like in *Clapper*, Bradford's asserted harm depends on a highly attenuated chain of possibilities: that he will violate NRS 195.020, that state actors will learn of this supposed violation, that the state actors will charge Bradford with the violation, that Bradford will need to invoke the rebuttal procedure set forth in NRS 220.170(3), that the state actors would challenge this invocation, and that the court presiding over this future criminal trial will accept the state's argument over Bradford's. As such, Bradford has no standing to assert this claim and it will be dismissed without prejudice.

**v.**     **Claim 5**

In claim 5, Bradford alleges that NRS 220.170(3) (and the NRS in general, it seems) violates the Fourteenth Amendment's Due Process Clause.  Bradford claims that Nevada has created a "liberty and property interest" in having state officials codify only those laws that are "included/found in the Statutes of Nevada." ECF No. 15 at 37.  According to Bradford, the NRS contains provisions of law not found in the Statutes of Nevada.  This inclusion supposedly effects a deprivation of the rebuttal procedure created by NRS 220.170(3), which "is a protected species of property." *Id.* at 37.  Finally, Bradford alleges that "[t]he omission of 1957 Statutes of Nevada, Chapter 2 from the 'HISTORY' of every section/statute" in the NRS renders the rebuttal procedure meaningless or nonexistent." *Id.*

Bradford lacks standing to bring this claim because he has not alleged an injury.  Bradford does not claim that he invoked the supposedly meaningless rebuttal procedure, and nor does he allege an intent to do so in the future.  Bradford did reallege and incorporate his intent to challenge NRS 195.020 as stated in claim 4, but, again, this allegation, taken as true, does not show that any harm is certainly impending because it is based on an attenuated chain of possibilities.  This claim will therefore be dismissed with leave to amend.

**vi.**     **Claim 6**

In claim 6, Bradford alleges that the Statute Revision Commission violated the separation-of-powers doctrine when it failed to copy the NRS from SB2. ECF No. 15 at 40.  By failing to do so, the Commission—which comprised three Nevada Supreme Court justices—supposedly altered the public's legal rights and duties and therefore usurped legislative authority. *Id.*

Even accepting these allegations as true, Bradford does not allege a past or certainly impending injury.  He does not allege, for example, which of these laws are being enforced against him.  "The party who invokes the power (to annul legislation on grounds of its unconstitutionality) must be able to show not only that the statute is invalid, but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement." *Poe v. Ullman*, 367 U.S. 497, 504–05 (1961).  Bradford has not alleged so here, and his claim will be dismissed without prejudice.

### vii.    Claim 7

In claim 7, Bradford alleges that various current and former employees of Nevada's Legislative Counsel Bureau violated his Fourteenth Amendment due process rights by keeping certain statutes in the NRS code that lack a valid correlating law in the Statutes of Nevada. *Id.* at 41. This action, according to Bradford, encourages the arbitrary and discriminatory enforcement of certain laws that have been repealed. *Id.* Further, the inclusion of these laws supposedly deprives Bradford of the rebuttal procedure in NRS 220.170(3). *Id.*

Bradford lacks standing here, too. Even accepting these allegations as true, Bradford has not alleged an actual or imminent injury. Instead, he merely points to laws that he believes violate his constitutional rights. This is insufficient for standing, and this claim will be dismissed without prejudice.

### viii.    Claim 8

In Count 8, Bradford claims that current and former employees of Nevada's Legislative Counsel Bureau violated his Fourteenth Amendment substantive and procedural due process rights by omitting SB2 "from the 'HISTORY' of every section/statute in the NRS code, even those that it would have affected." *Id.* at 43. Bradford complains that this omission violates the due process clause insofar as it precludes him from invoking NRS 220.170(3)'s rebuttal procedure. *Id.* Further, Bradford alleges that the Legislative Counsel Bureau's employees failed to provide a "key" identifying the abbreviations in the "history" of certain NRS provisions. *Id.* at 44. Bradford claims that this omission "precludes fair notice that the 'NCL/CL1929' and 'RL1912' citations are not actual laws found in the Statutes of Nevada." *Id.*

Again, Bradford lacks standing to bring this claim because there is no injury. Bradford does not allege that any of these laws are being enforced against him, or that enforcement is certainly impending. Further, Bradford does not claim that he was injured through use of the allegedly meaningless rebuttal procedure. In the absence of an injury, Bradford lacks standing and this claim will be dismissed without prejudice.

### ix.    Claim 9

Turning to claim 9, Bradford claims that current and former employees of Nevada's Legislative Counsel Bureau have chilled his First Amendment rights by omitting SB2 and its alleged effect "from any applicable 'HISTORY' in the NRS code." *Id.* at 45.  According to Bradford, this omission effects a First Amendment violation because it impedes him in his "efforts to challenge the sections/statutes" of the NRS. *Id.* at 45–46.  Bradford also claims that defendants' actions have caused him trepidation in weighing whether to file his complaint because he wonders how his "novel" argument will be received. *Id.* at 46.  Finally, Bradford alleges an intent to bring a "rebuttal/challenge" to NRS 195.020. *Id.*

This claim fails because Bradford alleges only a speculative injury.  Bradford brings this claim in the First Amendment context, which means that he lacks standing unless there exists a genuine threat of imminent prosecution. *Humanitarian Law Project v. U.S. Dept. of Treasury*, 463 F. Supp. 2d 1049, 1068 (C.D. Cal. 2006) (citing *Thomas*, 220 F.3d 1134, 1138 (9th Cir. 2000)).  To determine the genuineness of a claimed threat of prosecution, courts consider three factors: (1) whether the plaintiff has articulated a concrete plan to violate the law in question; (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings; and (3) the history of past prosecution or enforcement under the challenged statute. *Id.* at 870.

Here, Bradford has not alleged a genuine threat of imminent prosecution.  He has not articulated a concrete plan to violate NRS 195.020.   Instead, Bradford merely makes the bare allegation that he would like to challenge NRS 195.020, but—even assuming that this challenge constitutes First Amendment activity—he does not offer any allegations regarding "when, to whom, where, or under what circumstances." *See Thomas*, 220 F.3d at 1138.  Instead, Bradford merely alleges "[a] general intent to violate a statute at some unknown date in the future," which "does not rise to the level of an articulated, concrete plan." *Id.* at 1139.

Bradford likewise fails to allege that prosecuting authorities have communicated a specific warning or threat to initiate proceedings under NRS 195.020 or that there is a history of past

1   prosecution or enforcement under the challenged statute.  Accordingly, Bradford lacks standing to
2   bring this claim and it will be dismissed without prejudice.

3                                 **x.    Claim 10**

4          In Count 10, Bradford claims that his procedural and substantive due process rights are
5   violated every time the defendants cite or enforce a provision of the NRS that contains a repealed
6   provision or that does not codify a law found in the Statutes of Nevada. *Id.* at 47.  Also, this
7   citation/enforcement supposedly deprives Bradford of a state-created interest in NRS 220.170(3)'s
8   rebuttal procedure. *Id.* at 48.

9          Bradford further alleges that he intends to "speak out against speech and activities that
10  condone hate, violence, and oppression" by "going to meetings, assemblies, internet chat rooms,
11  and other locales where people . . . congregate, assemble or meet." *Id.* at 51.  Bradford intends to
12  "speak out against the way [he] believe[s] that the leaders of this State have conspired to subject
13  the residents, citizens, and visitors of Nevada to unconstitutional laws and statutes." *Id.*  Bradford
14  points to three statutes that he believes proscribe this conduct and might subject him to liability:
15  (1) NRS 203.030, which makes it a misdemeanor to "willfully provoke, or attempt to provoke,
16  another person to commit a breach of the peace"; (2) NRS 203.090, which makes it a
17  misdemeanor to "willfully disturb any assembly or meeting not unlawful in its character"; (3)
18  NRS 195.020, which defines the term "principals" under Nevada's criminal statutes. *Id.* at 51.
19  Finally, Bradford alleges that it is unconstitutionally vague to cite/enforce a provision of the NRS
20  that does not codify a law found in the Statutes of Nevada. *Id.* at 51.

21                         a)   Substantive due process and vagueness.

22         Beginning with substantive due process, the Court finds that Bradford has failed to state a
23  plausible claim for relief.  First, it is unclear to the Court precisely what right Bradford claims is
24  protected by the substantive due process doctrine.  This runs afoul of the Supreme Court's
25  instruction that a plaintiff provide "a 'careful description' of the asserted fundamental liberty
26  interest for the purposes of substantive due process analysis." *Chavez v. Martinez*, 538 U.S. 760,
27  775–76 (2003).  However, Bradford may be relying on: the right articulated in his second claim
28  (i.e., the right to have a legislative body publish "all statute laws . . . in the sessions laws, with an

1  enacting clause on the face of the law to show not only the terms/provisions of the law, but also

2  the authority by which is governs," ECF No. 15 at 31); the supposed state-created interest in the

3  rebuttal procedure; or a supposed interest "that the NRS code will only codify what is

4  found/included in the Statutes of Nevada." *Id.* at 47–48.  Under either theory, Bradford lacks

5  standing because he has not sufficiently alleged an injury.

6       In *Lujan v. Defenders of Wildlife*, several organizations dedicated to wildlife conservation

7  asserted that certain actions by the Secretary of the Interior increased the rate of extinction for

8  endangered and threatened species that the organizations' members desired to observe.  *Lujan v.*

9  *Defenders of Wildlife*, 504 U.S. 555, 557–58, 562–63 (1992).  To analyze injury, the Court

10 focused on the affidavits of two members: one member said that she had observed the traditional

11 habitat of the Nile crocodile and hoped to return to observe the crocodile directly; the second

12 member stated that she had observed the habitat of endangered species in Sri Lanka and that she

13 intended to return there in hopes of spotting an endangered elephant and leopard. *Id.* at 563.  The

14 Court held that the organizations failed to establish an injury-in-fact because "an 'inten[t]' to

15 return to the place they had visited before . . . is simply not enough." *Id.*  "Such 'some day'

16 intentions—without any description of concrete plans, or indeed even any specification of *when*

17 the some day will be—do not support a finding of the 'actual or imminent' injury" that the

18 Supreme Court's standing jurisprudence requires. *Id.*

19       Here, Bradford has not sufficiently alleged an injury.  Again, he does not claim that any of

20 these laws have been enforced against him.  Bradford does, however, allege an intent to express

21 speech that he believes violates certain statutes.  The logic in this claim appears to be that this

22 expression will result in a prosecution and, subsequently, the application of an invalid law or the

23 deprivation of the rebuttal procedure.  But even assuming that the speech does in fact violate the

24 above-cited statutes, Bradford—like the plaintiffs in *Lujan*—has alleged no more than "someday"

25 intentions.   There is no concrete plan or specification of *when* the "someday" will be.  Therefore,

26 on these allegations, Bradford has not alleged an actual or imminent injury.[2]

27 

28 [2] Further, the Court finds that these allegations are likewise insufficient to show standing even
   under the relaxed First Amendment standards because Bradford has alleged no more than a general intent

For these same reasons, Bradford's vagueness challenge fails, too. Even in a vagueness challenge, plaintiff "must establish constitutional standing with regard to the provisions challenged." *Hunt v. Cty. of Los Angeles*, 638 F.3d 703, 709 (9th Cir. 2011). In making a vagueness challenge, further, "a plaintiff actually raises a due process, as opposed to First Amendment, claim." *Id.* (citation omitted). This is so because the vagueness doctrine "is an outgrowth not of the First Amendment, but of the Due Process Clause." *Id.* (citing *Holder v. Humanitarian Law Proj.*, 561 U.S. 1 (2010)). With this in mind, Bradford's vagueness challenge fails because—for the same reasons stated above—he lacks standing.

b) Procedural due process

As stated, "[p]rocedural due process claims have two elements: (1) a deprivation of a protected liberty or property interest, and (2) a denial of adequate procedural protections." *Blocktree Props., LLC v. Publ. Utility Dist. No. 2 of Grant Cnty. Wash.*, 447 F. Supp. 3d 1030, 1038–39 (E.D. Wash. 2020). Property interests "are created by a source independent of the Constitution, like state law," and they "include anything to which a plaintiff has a 'legitimate claim of entitlement.'" *Id.* at 1039.

For the first element, Bradford claims a deprivation of the rebuttal procedure in NRS 220.170(3). However, Bradford has not alleged in this count an instance where he invoked the supposedly meaningless rebuttal procedure.

Further, and as stated above, Bradford has not sufficiently alleged that an injury is imminent. Bradford seems to recognize that this is so, given that his complaint advances a novel standing argument: that when certain provisions of the NRS are cited/enforced, "there is already a deprivation of the liberty/property interest created by NRS 220.170(3)." ECF No. 15 at 47 (emphasis in original).

At the pleading stage, the Court must accept as true all well-pled facts, but it "[is] not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556

---

(rather than a concrete plan) to violate the challenged provisions of the NRS, and he did not allege a specific warning or threat from prosecuting authorities to initiate proceedings under any challenged provision of the NRS.

1 U.S. 662, 678 (2009).  Bradford's standing theory is a legal conclusion, not a well-pled fact, and
2 the Court declines to accept it as true in this count and throughout his complaint.

3          Further, the Court does not believe that Bradford's standing theory is consistent with
4 Supreme Court jurisprudence.  The injury that a plaintiff alleges "must be unique to that plaintiff,
5 one in which he has a 'personal stake' in the outcome of a litigation seeking to remedy that harm."
6 *Coalition of Sustainable Delta v. F.E.M.A.*, 711 F. Supp. 2d 1152, 1163 (E.D. Cal. 2010).
7 Additionally, the injury must be "concrete . . ., distinct and palpable," *id.*, and it "must affect the
8 plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016).

9          Here, plaintiff's standing theory would create an injury every single time the defendants
10 cite or enforce a provision of the NRS supposedly lacking a correlating law in the Statutes of
11 Nevada, without regard to whether a particular statute applied to Bradford, whether he intended to
12 violate it, and whether he intended to invoke the rebuttal procedure to challenge the statute.  This
13 theory, taken as true, would manufacture an injury that is not concrete or particularized, not
14 unique to plaintiff, and that would not affect plaintiff in a personal and individual way.  Further,
15 plaintiff's theory would dramatically expand the categories of cases where there exists standing.
16 In sum, Bradford lacks standing to bring his claim and it will be dismissed with leave to amend.

17                              **xi.     Claim 11**

18          Bradford alleges that in November 2019 he challenged NRS 200.020—which provides the
19 definition for "malice" under Nevada's homicide statutes—as being invalid because it is not found
20 within any valid act of the Nevada legislature. ECF No. 15 at 53.  The challenge occurred in the
21 context of a criminal case in which Bradford was a defendant. *Id.* Bradford claims that, in
22 response, defendant Wolfson argued that NRS 200.020 "was prima facie of Section 9 of the
23 Senate Bill No. 2 (1957)." *Id.*  This argument, according to Bradford, deprived him of the rebuttal
24 procedure in NRS 220.170(3). *Id.*  Further, Wolfson's argument supposedly "made [Bradford]
25 hesitant to bring similar challenges against other NRS code sections/statutes." *Id.*

26          This claim will be dismissed without prejudice because, on these allegations, there does
27 not appear to be a deprivation of the rebuttal procedure.  Tellingly, Bradford does not allege how
28 the state court resolved his challenge.  Without this allegation, the Court is left without sufficient

factual matter to agree with Bradford that the rebuttal procedure in NRS 220.170(3) is

meaningless, or that Bradford was deprived of it. After all, there is no deprivation of the rebuttal

procedure if the state court rejected the defendants' argument and instead accepted Bradford's. To

the extent Bradford means to challenge the state court's resolution of his invocation of the rebuttal

procedure, Bradford should say so if he chooses to amend this claim.

### xii.   Claim 12

Bradford's 12th cause of action is for respondeat superior. However, respondeat superior

is a theory of liability that can be asserted against an employer, it "is not itself a cause of action or

a cognizable legal claim." *McCormack v. Cty. and Cnty. of Honolulu*, 2014 WL 692867, at *2 (D.

Haw. Feb. 20, 2014). Therefore, this claim is dismissed without prejudice.

### xiii.   Claim 13

Bradford alleges that he attempted to invoke NRS 41.036 and NAC 41.130 to assert tort

claims against the Legislative Counsel Bureau, Statute Revision Commission, and Secretary of

State. ECF No. 15 at 26, 57. These claims challenged certain actions of the Commission and

Legislative Counsel Bureau in relation to the NRS and SB2. *Id.* at 57. Bradford claims that

defendants Ford and Sisolak discarded his claims without rendering a decision or following the

procedures required under Nevada law. *Id.* These actions supposedly violated Bradford's right to

petition the government for redress and due process of law. *Id.* at 55–56.

Nevada law does indeed provide a mechanism to assert claims against the state with the

Attorney General. NRS 41.036. And, as Bradford alleges, the Attorney General is required to

investigate certain claims and submit findings to the State Board of Examiners. NRS 41.036(5).

However, a claim "must be . . . [s]ubmitted in the original to the office of the ex oficio clerk of

the State Board of Examiners at the Blasdel Building, Capitol Complex, Carson City, Nevada."

NAC 41.100(3)(c).

Bradford does not allege that he did so. In fact, the exhibits that Bradford incorporated

into this count show that his claims were submitted to defendant Ford, Secretary of State Barbara

Cegavske, and the Legislative Counsel Bureau. ECF No. 15-1 at 19, 25, and 30.; *see also* ECF

No. 15 at 55 ("the Nevada Attorney General received three separate claims from me."). None of

these officials or entities are the ex oficio clerk of the State Board of Examiners. *See* NRS 353.033 ("the Director of the Office of Finance is ex officio Clerk of the State Board of Examiners."). Therefore, even taking Bradford's allegations as true, they do not show that he is entitled to relief (as required by Rule 8(a)), *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009), and his alleged injury is not fairly traceable to the challenged actions of the defendant (which is a requirement for standing), *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). This claim will be dismissed with leave to amend.[3]

### xiv.    Claim 14

In count 14, Bradford alleges that § 9 of SB2 infringes his First and Fourteenth Amendment rights. *Id.* at 58. According to Bradford, "the mere citation of the NRS code . . . by the defendants, or their subordinates and employees, suffices to threaten the enforcement of Section 9" of SB 2. *Id.* The threat of SB2 § 9's enforcement supposedly "has a chilling effect" on Bradford's First Amendment right to invoke the rebuttal procedure in NRS 220.170(3). *Id.* Bradford further alleges that defendant Wolfson "has shown that he will use Section 9 of the act to deprive [Bradford] of NRS 220.170(3)'s rebuttal procedure."

Bradford brings this claim in the First Amendment context, which means that he lacks standing unless there exists a genuine threat of imminent prosecution. *Humanitarian Law Project v. U.S. Dept. of Treasury*, 463 F. Supp. 2d 1049, 1068 (C.D. Cal. 2006) (citing *Thomas*, 220 F.3d 1134, 1138 (9th Cir. 2000)). Again, to determine the genuineness of a claimed threat of prosecution, courts consider three factors: (1) whether the plaintiff has articulated a concrete plan to violate the law in question; (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings; and (3) the history of past prosecution or enforcement under the challenged statute. *Id.* at 870.

---

[3] To analyze the sufficiency of a plaintiff's complaint at the pleading stage, the Court may consider documents attached to the complaint or incorporated by reference in the complaint. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

To begin, the Court declines to accept as true Bradford's contention that the mere citation of the NRS code suffices to threaten enforcement of SB2 § 9.  This contention is a legal conclusion, not a well-pled fact.

As a reminder, § 9 provides that "[t]he following laws and statutes attached hereto, consisting of NRS section 1.010 to 710.590, inclusive, constitute the Nevada Revised Statutes: (Here followed NRS 1.010 to 710.590, inclusive.)." ECF No. 15-1 at 9.  Bradford does not challenge the past enforcement of one of these statutes against him.  Thus, Bradford must allege a genuine threat of imminent prosecution, but he has not done so.  He has not articulated a concrete plan to violate any of these laws.  Further, Bradford does not allege that prosecuting authorities have communicated a warning or threat to initiate proceedings under any of the challenged provisions of the NRS.  Accordingly, even if Bradford had plausibly alleged a history of past prosecution or enforcement under a challenged provision of the NRS, the former two *Thomas* factors outweigh the third and show that Bradford has not alleged a real or imminent threat of prosecution.  Thus, Bradford lacks standing to assert this claim and it will be dismissed without prejudice.

**D.  Instructions for amendment**

If plaintiff would like to amend his complaint he must do so by June 14, 2021.  Plaintiff is advised that he must specify which claims he is alleging against which defendants. Although the Federal Rules of Civil Procedure adopt a flexible pleading policy, Plaintiff still must give defendants fair notice of each of the claims he is alleging against each defendant. Specifically, he must allege facts showing how each named defendant is involved and the approximate dates of their involvement. Put another way, Plaintiff should tell the Court, in plain language, what each defendant did to him and when. "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Further, Plaintiff's amended complaint must be short and plain. The simpler and more concise Plaintiff's complaint, the easier it is for the Court to understand and screen it. The Federal Rules also require this. Under Federal Rule of Civil Procedure 8, Plaintiff's amended complaint

must contain "a short and plain statement of the claim showing that [Plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). "[E]ach claim founded on a separate transaction or occurrence . . . must be stated in a separate count." *Id.*

In federal court, litigants are subject to a simplified notice-pleading standard. *Skierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). The notice-pleading standard "relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Id.* Thus, the notice-pleading standard merely requires plaintiff to "give the defendant fair notice of what the . . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). And while it is certainly permissible under the rules to attach exhibits to a complaint and incorporate those exhibits by reference, Fed. R. Civ. P. 10(c), "it is not necessary to submit evidence to prove the allegations in [a] complaint because plaintiff's factual allegations will be accepted as true" at the pleading stage, *Knapp v. Cate*, 2010 WL 3521871, at *6 (E.D. Cal. Sept. 8, 2010).

Two cases from the Eastern District of California provide helpful examples. In *Knapp v. Cate*, the plaintiff was an incarcerated litigant who alleged that prison authorities had retaliated against him for exercising his rights under the First Amendment to file grievances against the government. *Knapp*, 2010 WL 3521871 at *2. Plaintiff's complaint was 66 pages of mostly single-spaced text and did not contain any exhibits. *Id.* The Court held that plaintiff's complaint violated Rule 8 because it was "too long in light of the types of claims" he was raising. *Id.* As a result, the Court allowed plaintiff leave to amend but limited him to "no more than 25 pages to set forth his claims in a short and plain manner." *Id.* at 4.

The plaintiff in *Thomas v. Bick* was also an incarcerated litigant. *Thomas v. Bick*, 2016 WL 4553536, at *1 (E.D. Cal. Sept. 1, 2016). Plaintiff had sued several prison officials under the Eighth Amendment for allegedly refusing to treat his serious liver condition.[4] Plaintiff's

---

[4] *See generally* Compl., ECF No. 1, *Thomas v. Bick*, Case No. 2:16-cv-1425 TLN CKD P (June 26, 2016). The Court takes judicial notice of the allegations in the *Thomas* plaintiff's complaint, though it

complaint was 45 pages and contained more than 125 paragraphs.[5]  The Court held not only that plaintiff's complaint was too long, but that it contained repetitive information not relevant or meaningful to any cognizable claim. *Thomas*, 2016 WL 4553536 at *1.  Thus, the Court dismissed the complaint and limited plaintiff's amended complaint to 20 pages. *Id.*

Here, plaintiff's claims are more complicated than those set forth in *Knapp* and *Thomas*. But the complaint that the Court screened today is 68 pages with 33 pages of exhibits, it contains repetitive material, and it is too long even for the claims that plaintiff asserts. ECF Nos. 15, 15-1. Further, plaintiff sometimes includes more than one claim under each count, and he includes allegations not relevant to any claim. *See, e.g.*, ECF No. 15 at 10 ("In 1955 the salaries of certain members of the S.R.C. were multiplied by as much as five time the previous amount").  Plaintiff, additionally, filed a motion to supplement his pleading (which is addressed below), and his proposed supplement is 21 pages long with an eye-popping 150 pages of exhibits. ECF Nos. 20, 20-1 to 20-3.  The Court screened plaintiff's complaint in an effort to move this case forward, but the Court warns plaintiff that his complaint (not accounting for the supplement) exceeds the bounds of Rule 8(a)'s mandate for a short and plain statement.  Should plaintiff choose to file an amended complaint, he should note that a complaint equal in length to the one the Court screened today is unmanageable and subject to dismissal.

Finally, if Plaintiff chooses to file an amended complaint, he is advised that an amended complaint supersedes the original complaint and, thus, the amended complaint must be complete by itself.  *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) (holding that "[t]he fact that a party was named in the original complaint is irrelevant; an amended pleading supersedes the original"). Plaintiff's amended complaint must contain all claims, defendants, and factual allegations that Plaintiff wishes to pursue in this lawsuit.

_____

expresses no opinion on the veracity of those allegations. *See Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (explaining that the Court may take judicial notice of "matters of public record" but "not for the truth of the facts recited therein.") (cleaned up).

[5] *Id.*

1      **II.     Plaintiff's motions**

2             **A.   Service motions (ECF Nos. 13, 26, 27, and 28)**

3             Bradford moves for issuance of summonses, for an order directing the U.S. Marshal to

4      effect service of process, and to extend the time for service. ECF Nos. 13, 26, 27, and 28.

5             Because the Court today dismisses plaintiff's complaint, there will no longer be an

6      operative complaint on the docket.  Without an operative complaint, there is no pleading to serve

7      on any defendant.  Accordingly, the motions for issuance of summonses and for an order

8      directing service (ECF Nos. 13, 26, and 28) shall be denied. *See also Karam v. Univ. of Ariz.*,

9      2019 WL 588151, at *2 (D. Ariz. Feb. 13, 2019) ("Even if the Court finds that a litigant is unable

10     to pay, it has an additional, statutory obligation to screen a complaint before it may be served.").

11            Turning to Bradford's motion for an order extending the time for service: Rule 4 provides

12     that plaintiff must serve defendant "within 90 days after the complaint is filed." Fed. R. Civ. P.

13     4(m).  However, Bradford's complaint is subject to mandatory sua sponte screening under 28

14     U.S.C. § 1915A(a).  "During the screening period, Plaintiff's 90-day time limit for service of

15     process [is] tolled." *Mejia Banegas v. Doe #2*, 2019 WL 1353712, at *2 (S.D. Cal. Mar. 26,

16     2019).  Therefore, no extension is necessary and Bradford's motion to extend time (ECF No. 27)

17     will be denied as moot.

18            **B.   Motion for leave to file supplemental pleading (ECF No. 20)**

19            Bradford moves to "supplement" his complaint. ECF No. 20.  He relays that the

20     supplement "sets out injuries . . .which have become 'complete' since the filing of [his]

21     complaint." *Id.*  The Court previously allowed plaintiff to amend his complaint. ECF No. 14.  An

22     "amended complaint must be complete in and of itself without reference to prior pleadings or to

23     other documents." *See, e.g.*, *McClannahan v. Nev. State Bank*, 2019 WL 3666895, at *2 (D. Nev.

24     July 10, 2019).  Therefore, this motion will be denied.

25            **C.   Motion to be served by mail, not by email (ECF No. 16)**

26            Bradford moves to have his fillings served by mail. ECF No. 16.  He states that he has

27     never refused any legal mail, but that he has not received certain filings of this Court. *Id.*

28     Bradford represents that he is pursuing administrative remedies about this issue. *Id.*

1    In the District of Nevada "[e]ach NDOC facility, excluding rural NDOC camps, must

2    establish an email address for receipt of documents filed electronically." D. Nev. Fifth Am. Gen.

3    Ord. 2012-01 at 2.  NDOC staff must "print the electronic transmission receipt, the hyperlinked

4    order, and other documents filed by the Court." *Id.*

5        If plaintiff does not receive a specific document, he may ask the Court to resend it.  But, at

6    this time, the Court declines to issue a blanket order circumventing the process set forth in the

7    Court's Fifth Amended General Order.

8    **III.    Conclusion**

9        IT IS THEREFORE ORDERED that the entirety of plaintiff's amended complaint (ECF

10   No. 15) is DISMISSED without prejudice but with leave to amend by June 16, 2021.  Failure to

11   meet this deadline may result in a recommendation to the district judge that this case be

12   dismissed.

13       IT IS FURTHER ORDERED that plaintiff's motion for issuance of summons (ECF No.

14   13) is DENIED.

15       IT IS FURTHER ORDERED that plaintiff's motion to have filings served by mail (ECF

16   No. 16) is DENIED.

17       IT IS FURTHER ORDERED that plaintiff's motion for leave to file a supplement to his

18   complaint (ECF No. 20) is DENIED.

19       IT IS FURTHER ORDERED that plaintiff's motion for an order directing service of

20   process by the U.S. Marshal (ECF No. 26) is DENIED.

21       IT IS FURTHER ORDERED that plaintiff's motion to extend time (ECF No. 27) is

22   DENIED as moot.

23       IT IS FURTHER ORDERED that plaintiff's second motion for issuance of summons

24   (ECF No. 28) is DENIED.

25       DATED: May 14, 2021.

26                                                    _____
                                                      BRENDA WEKSLER
27                                                    UNITED STATES MAGISTRATE JUDGE

28